UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| KARMALOOP, INC., *et al.*,[1] | ) | Case No. 15-10635 (____) |
| | ) | |
| Debtors and Debtors in Possession. | ) | Joint Administration Requested |

**ORDER AUTHORIZING DEBTORS TO: (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO COMVEST CAPITAL II, L.P., AS AGENT, AND THE LENDERS**

This matter came before this Court on the motion (the "Motion") of Karmaloop, Inc., a Delaware corporation, and KarmaloopTV, Inc., a Delaware corporation (each, a "Debtor" and collectively, "Debtors"), requesting that this Court enter an order authorizing Debtors to (a) use certain Cash Collateral on an emergency basis pending a Final Hearing; (b) incur certain Postpetition Debt on an emergency basis pending a Final Hearing; and (c) grant adequate protection and provide security and other relief to Comvest Capital II, L.P., in its capacity as agent ("Prepetition Agent") to the lenders party to the Credit Agreement ("Prepetition Lenders"), and Comvest Capital II, L.P., in its capacity as agent ("Postpetition Agent"; together Prepetition Agent, "Agents") to the lenders party to the Postpetition Loan Agreement ("Postpetition Lenders"; together with Prepetition Lenders, "Lenders"). All capitalized terms used but not otherwise defined herein have the meanings assigned to them in Exhibit A attached hereto.

This Order constitutes findings of fact and conclusions of law under Fed. R. Bankr. P. 7052 and will take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code §§ 363 and 364 and Fed. R. Bankr. P. 4001(b) and (c), and objections, if any, having been withdrawn, resolved, or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

---

[1] The Debtors in the Cases are Karmaloop, Inc., a Delaware corporation, and KarmaloopTV, Inc., a Delaware corporation.

A. On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their respective businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Cases and this proceeding under 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C. No Committee has been appointed in these Cases.

D. Subject to Paragraph 8 of this Order, each Debtor admits, stipulates, and agrees that:

1. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens, and the prepetition financing relationship among Debtors, Prepetition Agent, and Prepetition Lenders;

2. the Prepetition Debt constitutes the legal, valid, and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents, all of which are deemed to be reaffirmed by the parties thereto;

3. as of the Filing Date, Debtors are each liable for the payment and performance of the Prepetition Debt, and the Prepetition Debt is an allowed claim in the principal amount of not less than $27,866,658, exclusive of accrued interest, fees, costs, and other charges and accrued and accruing Allowable 506(b) Amounts, and is an allowed secured claim in an amount not less than $13,000,000;

4. no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination, or other claim, cause of action, or challenge of any nature under the Code, applicable non-bankruptcy law, or otherwise;

5. the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6. upon the entry of this Order, for purposes of Code §§ 506(c) and 507(b) and Fed. R. Bankr. P. 3012, as of the Filing Date, the value of Prepetition Agent's and Prepetition Lenders' interest in the Prepetition Collateral was not less than $13,000,000; provided, however, that nothing herein shall prejudice Prepetition Agent's and any Prepetition Lender's right to later: (1) assert that their respective interests in the Prepetition Collateral lack adequate protection; and (2) seek a higher valuation of the Prepetition Collateral;

7. Debtors do not have, and each Debtor hereby releases, and is forever barred from bringing or asserting, any claims, defenses, or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt, or otherwise, against Prepetition Agent, Prepetition Lenders, and each of their respective affiliates, shareholders, subsidiaries, agents, officers, directors, members, managers, employees, representatives, attorneys, advisors, principals, consultants, predecessors in interest, successors, and assigns.

E. Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362, 363, and 364 for any decrease in the value of their interests in the Prepetition Collateral from and after the Filing Date.

F. Debtors have agreed to remit Cash Collateral to Agents, and Debtors need to incur Postpetition Debt, as provided herein through the conclusion of the Final Hearing in order to prevent immediate and irreparable harm to Debtors' estates and to minimize disruption to, and avoid the termination of, their business operations. Entry of this Order will also enhance the possibility of maximizing the value of Debtors' businesses in connection with an orderly sale or other disposition of the Aggregate Collateral.

G. Debtors are unable to obtain unsecured credit allowable under Code § 503(b)(1) sufficient to finance the operation of their businesses. Except as provided below, Debtors are unable to obtain credit allowable under Code §§ 364(c)(1), (c)(2), or (c)(3) on terms more favorable than those offered by Postpetition Agent and Postpetition Lenders. An immediate need exists for the Debtors to obtain Postpetition Debt in order to continue operations and to administer and preserve the value of their estates. The Debtors, as of the Filing Date, do not have

sufficient cash resources to finance their ongoing operations and require the availability of working capital from Postpetition Debt, the absence of which would immediately and irreparably harm the Debtors, their estates, and creditors.

H. The terms of the Postpetition Debt have been negotiated at arm's length, and the Postpetition Debt is being extended in good faith, as that term is used in Code § 364(e).

I. The terms and conditions of the Postpetition Documents are fair and reasonable, the best available to Debtors under the circumstances, reflect Debtors' exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration.

J. Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agents' and Lenders' consent to the use of Cash Collateral and the provision of Postpetition Debt, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

K. The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (c), and 9014, and Code §§ 102(1), 363, and 364(c) and (d), and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1. <u>Authorization to Use Cash Collateral</u>. Debtors are authorized to remit Cash Collateral through the Termination Date solely in accordance with the terms of this Order.

2. <u>Procedure for Debtors' Use of Cash Collateral</u>.

    (a) <u>Delivery of All Cash Collateral to Postpetition Agent</u>. Debtors must deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Postpetition Agent in a manner satisfactory to Postpetition Agent) promptly upon Debtors' receipt thereof for application in accordance with Paragraph 2(d) of this Order.

    (b) <u>Account Debtors</u>. Without further order of the Court, Debtors shall, and the Agents may, directly notify in writing all account debtors of existing and future accounts

receivable of the Debtors and instruct all such account debtors to make payments directly into the Blocked Account.

(c) <u>Cash Collateral in Any Agents' or Lenders' Possession</u>. Agents are authorized to collect upon, convert to cash, and enforce checks, drafts, instruments, and any other forms of payment now or hereafter coming into any Agent's or any Lender's possession or control that constitute Aggregate Collateral or proceeds thereof.

(d) <u>Application of Cash Collateral</u>. Except as Agents may otherwise elect, Agents are authorized to apply all Cash Collateral now or hereafter in any Agent's or Lender's possession or control as follows: (1) first, to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts, until paid in full in cash; (2) second, to the payment of all other Prepetition Debt in accordance with the terms of the Prepetition Documents, until paid in full in cash; (3) third, to the payment of Postpetition Debt consisting of Postpetition Charges, until paid in full in cash; and (4) fourth, to the payment of all other Postpetition Debt in accordance with the terms of the Postpetition Documents, until paid in full in cash. All such applications to Postpetition Debt shall be final and not subject to challenge by any Person, including, without limitation, any Trustee. All such applications to Prepetition Debt shall be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 below that such applications resulted in the payment of an unsecured prepetition claim of Prepetition Agent and Prepetition Lenders. Any amounts that ~~are disgorged in connection with~~ are determined by the Court as a result of any such objection or determination will be ~~first applied to~~ deemed to reduce the Postpetition Debt, dollar-for-dollar ~~, until paid in full in cash~~ to have been improperly applied to the Prepetion Debt.

(e) <u>Prohibition Against Use of Cash Collateral</u>. Debtors may not use, seek to use, or be permitted to use any Cash Collateral for any purpose until the Aggregate Debt is indefeasibly paid in full in cash; <u>provided, however</u>, that Debtors may remit Cash Collateral solely as provided for in this Order.

3. <u>Authorization To Incur Postpetition Debt</u>.

(a) <u>Postpetition Documents</u>. Debtors are authorized and have agreed to: (1) execute the Postpetition Documents, including, without limitation, all documents that

-5-

Postpetition Agent and Postpetition Lenders find reasonably necessary or desirable to implement the transactions contemplated by the Postpetition Documents; and (2) perform their obligations under, and comply with, all of the terms and provisions of the Postpetition Documents and this Order. Upon execution and delivery thereof, the Postpetition Documents will constitute valid and binding obligations of Debtors enforceable in accordance with their terms. To the extent that there exists any conflict among the terms of the Motion, the Postpetition Documents, and this Order, this Order will govern and control.

(b)     Permitted Uses of Postpetition Debt. Debtors are authorized and have agreed to incur Postpetition Debt solely: (1) in accordance with the terms and provisions of this Order, (2) to the extent required to pay those expenses enumerated in the Budget, including, without limitation, the Carveout, as and when such expenses become due and payable, subject to the Permitted Variance, and (3) to pay Allowable 506(b) Amounts and Postpetition Charges. If Postpetition Lenders advance monies to Debtors and Debtors use any such monies other than in accordance with the terms and provisions of this Order, then such advances will be considered to be Postpetition Debt for purposes of this Order.

(c)     Refinancing of All Outstanding Prepetition Debt Upon Entry of Final Order. Effective upon entry of the Final Order, Debtors are authorized and have agreed to incur Postpetition Debt under Section 2.01(c)(4) of the Postpetition Loan Agreement to refinance, in full, all of the Prepetition Debt outstanding as of the date of the Final Order. Such refinancing of Prepetition Debt upon the entry of the Final Order will be final, subject only to the right of parties in interest to seek a determination in accordance with Paragraph 8 of this Order that such payment resulted in the payment of an unsecured prepetition claim of Prepetition Agent and Prepetition Lenders. Any amounts that are disgorged in connection with any such objection or determination will be first applied to reduce the Postpetition Debt, dollar-for-dollar, until paid in full in cash.

(d)     Certain Additional Material Terms of Postpetition Debt.

(i)     Maximum Amount. The maximum principal amount of Postpetition Debt outstanding may not at any time exceed the DIP Commitment; provided, however, that pending the Final Hearing, the

-6-

maximum principal amount of Aggregate Debt outstanding may not at any time exceed the Interim DIP Amount.

(ii) <u>Interest</u>. The Postpetition Debt will bear interest at a per annum rate equal to twelve percent (12%).

(iii) <u>Closing Fee</u>. Debtors will pay to Postpetition Agent, for the benefit of Postpetition Lenders, a closing fee (the "<u>Closing Fee</u>") in an amount equal to $150,000, which Closing Fee will be fully earned, due, and payable as follows: (1) $100,000 payable upon entry of this Order by adding such amount to the balance of the Postpetition Debt and (2) $50,000 payable upon entry of the Final Order by adding such amount to the balance of the Postpetition Debt.

(iv) <u>Maturity</u>. The Postpetition Debt will mature and be due and payable in full by Debtors on the Termination Date.

(v) <u>Prepetition Documents</u>. Each Guaranty, each Subordination Agreement, and each other Prepetition Document will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of any Cash Collateral consented to by Agents and Lenders pursuant to Code § 363 or additional financing by Agents and the Lenders pursuant to Code § 364. Each Obligor is and will remain liable for all guaranteed obligations and indebtedness under each Guaranty, including, without limitation, all Postpetition Debt, and any refinancing thereof.

(vi) <u>Joint and Several Liability of Debtors</u>. The obligations of each Debtor under this Order are joint and several.

(vii) <u>Control Agreements</u>. All Control Agreements (as defined in the Credit Agreement) in effect as of the Filing Date will remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order.

(e) <u>Superpriority Administrative Expense Status; Postpetition Liens</u>. The Postpetition Debt is hereby granted superpriority administrative expense status under Code § 364(c)(1), with priority over all costs and expenses of administration of the Cases that are incurred under any provision of the Code. In addition, Postpetition Agent is hereby granted the Postpetition Liens, for the benefit of itself and Postpetition Lenders, to secure the Postpetition Debt. The Postpetition Liens: (1) are in addition to the Prepetition Liens; (2) under Code §§ 364(c)(2), 364(c)(3), and 364(d), are Priority Liens (subject only to Permitted Priority Liens) without any further action by Debtors or Postpetition Agent, and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents or

instruments; (3) will not be subject to any security interest or lien that is avoided and preserved under Code § 551; (4) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case; (5) will not be subject to Code § 510(c); and (6) upon entry of the Final Order, will not be subject to any landlord's lien, banker's lien, bailee's rights, right of distraint, or levy, security interest, or any other interest that any landlord, bailee, warehousemen, bank, or landlord's mortgagee may have in any or all of the Aggregate Collateral located on such leased premises. Notwithstanding the foregoing, Debtors must execute and deliver to Postpetition Agent such financing statements, mortgages, instruments, and other documents as Postpetition Agent may request from time to time. Further, Prepetition Agent will serve as agent for Postpetition Agent for purposes of perfecting Postpetition Agent's security interest in any Postpetition Collateral that requires perfection by possession or control, including, without limitation, under any deposit account control agreement or similar agreement, and all Prepetition Third Party Documents will be deemed to be for the benefit of Postpetition Agent and Postpetition Lenders without any further order of Court or action by any Person. Without limiting the foregoing, Postpetition Agent, for itself and Postpetition Lenders, will, and will be deemed to, have a perfected Postpetition Lien on any new deposit account that any Debtor may establish on or after the date hereof without any further action by Debtors or Postpetition Agent.

(f) <u>Prohibition Against Additional Debt</u>. Debtors may not incur or seek to incur debt secured by a lien which is equal to, or superior to, the Prepetition Liens or the Postpetition Liens, or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code § 364: (1) Agents have consented to such order; (2) at the time such an order is entered, there is no Postpetition Debt outstanding, and no obligation of Postpetition Lenders to extend Postpetition Debt; or (3) such credit or debt is first used to pay the Aggregate Debt in full in cash.

4. <u>Adequate Protection of Interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral and the Prepetition Liens</u>. Prepetition Agent and Prepetition Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein and to the extent required under Code §§ 361, 362, 363, or 364 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date on account of the stay, use, sale, lease, or grant of any Prepetition Collateral.

(a) <u>Priority of Prepetition Liens; Allowance of Prepetition Agent's and Prepetition Lenders' Claim</u>. Subject to the terms of Paragraph 8 of this Order: (1) the Prepetition Liens constitute Priority Liens, subject only to the Postpetition Liens and Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid, and binding obligation of each Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses, or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable non-bankruptcy law; and (4) Prepetition Agent's and Prepetition Lenders' claim with respect to the Prepetition Debt is for all purposes an allowed claim within the meaning of Code § 506 in an amount not less than $13,000,000, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) <u>Replacement Liens</u>. Prepetition Agent is hereby granted the Replacement Liens, for the benefit of itself and the Prepetition Lenders, as security for payment of the Prepetition Debt. The Replacement Liens: (1) are in addition to the Prepetition Liens; (2) are properly perfected, valid, and enforceable liens without any further action by Debtors or Prepetition Agent, and without the execution, filing, or recordation of any financing statements, security agreements, mortgages, or other documents or instruments; and (3) will remain in full force and effect notwithstanding any subsequent conversion or dismissal of any Case. Notwithstanding the foregoing, Debtors are authorized to, and must, execute and deliver to Prepetition Agent such financing statements, mortgages, instruments, and other documents as Prepetition Agent may request from time to time in respect of the Replacement Liens.

(c) <u>Allowed Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of Prepetition Agent and Prepetition Lenders in the Prepetition Collateral granted pursuant to this Order proves insufficient, Prepetition Agent and Prepetition Lenders will have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Cases (other than Postpetition Agent's and Postpetition Lenders' claims under Code § 364) that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b).

-9-

5. <u>Termination Date; Rights and Remedies</u>.

(a) <u>Effect of Termination Date</u>. Unless extended by the Court upon the written agreement of Postpetition Agent, upon the Termination Date without further notice or order of Court: (1) Debtors' authorization to use Cash Collateral and to incur Postpetition Debt hereunder will automatically terminate; and (2) at Postpetition Agent's election (i) the Postpetition Debt will be immediately due and payable, (ii) Debtors will be prohibited from using any Cash Collateral for any purpose other than application to the Aggregate Debt in accordance with Paragraph 2(d) of this Order, and (iii) subject to the proviso at the very end of this sentence, Agents will be entitled to setoff any Cash Collateral in any Agent's or any Lender's possession or control and apply such Cash Collateral to the Aggregate Debt in accordance with Paragraph 2(d) of this Order; <u>provided, however,</u> that, during the five (5) business day period following the Termination Date, the Debtors, the Committee, and the United States Trustee may request an expedited hearing to respond to the application of Cash Collateral to the Aggregate Debt as set forth in subsection (iii) above and Agents and Lenders will not apply such Cash Collateral during such five (5) business day period prior to the resolution of any such response by the Court.

(b) <u>Rights and Remedies</u>. On the fifth (5th) business day after the Termination Date, at Postpetition Agent's election without notice or further order of the Court: (1) Agents will have automatic and immediate relief from the automatic stay with respect to the Aggregate Collateral (without regard to the passage of time provided for in Fed. R. Bankr. P. 4001(a)(3)), and will be entitled to exercise all rights and remedies available to them under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law; and (2) Debtors must surrender the Aggregate Collateral and otherwise cooperate with Agents and Lenders in the exercise of their rights and remedies under the Prepetition Documents, the Postpetition Documents, and applicable non-bankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease, or otherwise dispose of the Aggregate Collateral upon the request of, and subject to terms and conditions acceptable to, Agents. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtors, the Committee, and the United States Trustee may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not

occur; provided, however, that during such five (5) business day period, Postpetition Lenders will have no obligation whatsoever to advance any Postpetition Debt to Debtors.

(c) Access to Collateral. Upon the entry of the Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of the Debtors' leased premises that an Event of Default has occurred and is continuing, Agents may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and will be entitled to such Debtor's rights and privileges under such lease without interference from such landlord; provided, that such Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such Agent, calculated on a per diem basis.

6. Carveout.

(a) Carveout Terms. The Carveout with respect to each Carveout Professional: (1) equals an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the applicable line item in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the Termination Date; (2) will be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) must be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Prepetition Agent or the Postpetition Agent or any other creditor claiming a security interest or lien in same) before such payments are made from proceeds of the Postpetition Debt or the Aggregate Collateral. Further, Postpetition Agent shall have the right from time to time to reserve against the DIP Commitment, including, without limitation, by establishing one or more Reserves (as defined in the Postpetition Loan Agreement) under the Postpetition Loan Agreement, an amount equal to the sum of the aggregate amount of unpaid fees and expenses set forth in the Budget for the Carveout Professionals. Upon the Termination Date, Postpetition Lenders will provide Postpetition Debt to Debtors, to be used by Debtors for the sole purpose of funding the Carveout Professionals after the Termination Date, in the amount of $25,000 (subject to such amount being increased with the written consent of the Postpetition Lenders, the Debtors,

and any Committee), <u>less</u> the balances of any retainers held by such Carveout Professionals and any readily available cash proceeds of other property of Debtors' estates (other than property subject to an unavoidable lien in favor of Agents or any other creditor claiming a security interest or lien in same), and Postpetition Agent and Postpetition Lenders shall have the right to reserve against the DIP Commitment, including, without limitation, by establishing one or more Reserves (as defined in the Postpetition Loan Agreement) under the Postpetition Loan Agreement, for the foregoing amount. Except as set forth in this paragraph, Postpetition Agent and Postpetition Lenders will not have any obligation to fund any fees or expenses of any Carveout Professionals accrued on, prior to, or after the Termination Date. Any surplus portion of any retainers of a Carveout Professional after payment of allowed amounts shall be returned to the Agents for application in accordance with Paragraph 2(d) of this Order. Nothing contained herein constitutes, or may be construed as, consent to the allowance of any Carveout Professional's fees, costs, or expenses by any party and shall not affect the rights of the Debtors, Agents, the Lenders, the Committee, the United States Trustee, or any other party in interest to object to the allowance or payment of any amounts incurred or requested.

    (b) <u>Carveout Usage</u>. No portion of the Carveout and no Postpetition Debt or Aggregate Collateral may be used to pay any fees or expenses incurred by any Person, including any Debtor, any Committee, or any Carveout Professional, in connection with claims or causes of action adverse (or which claim an interest adverse) to Agents' or Lenders' interests in the Aggregate Collateral, including, without limitation, (1) preventing, hindering, or delaying Agents' or any Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred, (2) using or seeking to use any Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agents' and Lenders' written consent, or (3) objecting to, or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Aggregate Debt or any mortgages, liens, or security interests with respect thereto or any other rights or interests of Agents and Lenders, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Agents or Lenders; <u>provided</u>, <u>however</u>, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000, incurred by the Committee's Carveout Professionals in connection with the investigation of a potential Challenge in accordance with Paragraph 8 of this Order; <u>provided</u>,

further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation, and entry of this Order or any amendment hereto consented to by Postpetition Agent.

(c) Carveout Procedure. Debtors must, upon request of Postpetition Agent, provide to Postpetition Agent and the Committee a written report ("Carveout Report"), in which Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs, and expenses accrued or incurred by the Carveout Professionals through the date of the Carveout Report, and (2) the projected fees, costs, and expenses of the Carveout Professionals for the thirty (30) day period following the date of such Carveout Report. Nothing herein may be construed as consent by Agents or Lenders to the allowance of any fees, costs, or expenses of the Carveout Professionals or will affect the right of Agents or any Lender to object to the allowance and payment of any such fees, costs, or expenses, or the right of Agents or any Lender to the return of any portion of the Carveout that is funded with respect to fees, costs, and expenses for a Carveout Professional that are approved on an interim basis, but that are later denied on a final basis. No Carveout Professional will be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

7. No Surcharge. Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of Debtors' businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes any and all items potentially chargeable to Agents and Lenders under Code § 506(c). Therefore, in the exercise of their business judgment, subject to entry of the Final Order, Debtors agree that there will be no surcharge of the Aggregate Collateral for any purpose unless agreed to in writing by Agents and Lenders, and effective upon entry of the Final Order, each Debtor, on behalf of its estate, will be deemed to have waived any and all rights, benefits, or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to, or be asserted against, Agents, Lenders, or any Aggregate Collateral. In reliance on the foregoing, Agents and Lenders have agreed to the entry of this Order.

8. <u>Reservation of Rights; Bar of Challenges and Claims</u>. The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, will be binding on all Challenge Parties, unless, and solely to the extent that, (i) Debtors and Prepetition Agent receive written notice of a potential Challenge during the Investigation Period from any Challenge Party in accordance with this Paragraph 8 and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) <u>Challenge Procedure</u>. During the Investigation Period, a Challenge Party will be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, then it must notify Debtors and Prepetition Agent in writing during the Investigation Period of its demand that Debtors initiate a contested matter or an adversary proceeding in these Cases in respect of such Challenge. From the date that Debtors and Prepetition Agent receive such written notice, Debtors will then have five (5) days to notify the Challenge Party of whether Debtors intends to initiate such action and ten (10) days to initiate any such action. If Debtors notify such Challenge Party that Debtors do not intend to initiate a contested matter or an adversary proceeding, then such Challenge Party will have ten (10) days from the receipt of such notice to file a motion with the Court for leave to initiate a contested matter or an adversary proceeding in respect of such Challenge. Nothing herein grants standing in favor of any Challenge Party absent further order of this Court. Debtors, if timely notified of a potential Challenge, will retain authority to prosecute, settle, or compromise any such Challenge in the exercise of its business judgment and subject to any applicable further order of Court.

(b) <u>Bar of Challenges and Claims</u>. If Debtors and Prepetition Agent do not receive written notice of a potential Challenge during the Investigation Period (or such later date as agreed to in writing by Prepetition Agent and Prepetition Lenders or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens, and security interests of Prepetition Agent and Prepetition Lenders will be deemed to be allowed for all purposes in the Cases and will not be subject to any challenge whatsoever by any party in interest as to extent, validity, priority, or otherwise, and (2) Debtors and their respective estates will be deemed to have waived, released, and discharged Prepetition Agent, Prepetition Lenders, and each of their respective affiliates, shareholders, subsidiaries, agents, officers, directors, members, managers, employees, representatives, attorneys, advisors, principals, consultants, predecessors

in interest, successors, and assigns of and from any and all claims and causes of action, indebtedness, and obligations, of every type and nature whatsoever, that occurred on or prior to the date of entry of this Order with respect to, or in connection with, the Prepetition Debt, the Prepetition Liens, or the Prepetition Documents.

9. <u>Sale Covenants</u>. To effectuate the sale process for all, or substantially all, of Debtors' assets, Debtors have agreed to, and are authorized to, satisfy each of the following sale covenants and any other sale covenants set forth in Section 5.17 of the Postpetition Loan Agreement:

(a) <u>Bidding Procedures</u>. On or before April 15, 2015 (or such later date as Postpetition Agent may agree to in writing in its discretion), Debtors shall have obtained entry of one or more Court orders approving the procedures for the sale of all, or substantially all, of Debtors' assets, in form and substance satisfactory to Postpetition Agent (the "<u>Bidding Procedures Order</u>").

(b) <u>Auction</u>. On or before May 19, 2015 (or such later date as Postpetition Agent may agree to in writing in its discretion), Debtors shall have conducted one or more auctions for the sale of all, or substantially all, of Debtors' assets in accordance with the Bidding Procedures Order.

(c) <u>Sale Order</u>. On or before May 22, 2015 (or such later date as Postpetition Agent may agree to in writing in its discretion), Debtors shall have obtained entry of one or more orders of the Court approving the sale of all, or substantially all, of the Debtors' assets, in form and substance satisfactory to Postpetition Agent.

(d) <u>Closing</u>. On or before May 27, 2015 (or such later date as Postpetition Agent may agree to in writing in its discretion), Debtors shall have consummated one or more sales of all, or substantially all, of the Debtors' assets, on terms and conditions satisfactory to Postpetition Agent, and remitted all of the proceeds thereof (net only of such fees, expenses, charges, or other amounts that may be expressly agreed to, in writing, by Agents and Lenders) to Agents for application in accordance with Paragraph 2(d) of this Order.

Debtors, Agents, and Lenders may agree to amend or modify the foregoing sale covenants, in writing, without the need of any further notice, hearing, or order of this Court (other than a notice of such amendment or modification to be filed with this Court).

10. <u>Right to Credit Bid</u>. In connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise,

pursuant and subject to Code § 363(k), (a) Postpetition Agent will have the right to use the amounts then outstanding under the Postpetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral and (b) Prepetition Agent will have the right to use the amounts then outstanding under the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

11. Plan. Unless Agents and Lenders consent in writing, Debtors will not seek entry of an order confirming a plan in any Case unless the Aggregate Debt shall be indefeasibly paid in full in cash on the earlier of (a) the effective date of such plan or (b) the Termination Date, notwithstanding anything to the contrary in any such order confirming a plan.

12. Application of Sale Proceeds. Effective upon entry of the Final Order, all proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course of the Debtors' businesses will be remitted to Agents for application in accordance with Paragraph 2(d) of this Order.

13. Waiver of Right to Return/Consent to Setoff. Without the prior written consent of Agents and Lenders, Debtors will not agree or consent to any of the following: (a) to return any Aggregate Collateral pursuant to Code § 546(h); (b) to consent to any order permitting any claims pursuant to Code § 503(b)(9); and (c) to consent to setoff pursuant to Code § 553.

14. Indemnification. Debtors will indemnify and hold harmless Prepetition Agent and Prepetition Lenders, and Postpetition Agent and Postpetition Lenders, in accordance with the terms of the Prepetition Documents and the Postpetition Documents, respectively.

15. No Marshaling. Effective upon entry of the Final Order, none of the Agents, Lenders, or any of the Aggregate Collateral will be subject to the doctrine of marshaling.

16. Postpetition Charges. All Postpetition Charges must be promptly paid by Debtors in accordance with this Order and the Postpetition Documents, without need for filing any application with the Court for approval or payment thereof, within ten (10) business days of Postpetition Agent's written notice to Debtors, any Committee, and the United States Trustee.

17. <u>Force and Effect of Prepetition Documents</u>. Except as modified herein, and subject to the other provisions of this Order (including Paragraph 8 hereof) and the Code, the Prepetition Documents will remain in full force and effect with respect to the Prepetition Debt. To the extent that there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order governs and controls. Without limiting the foregoing, each Subordination Agreement is and will remain valid and binding upon each of the parties thereto notwithstanding the entry of this Order, constitutes a "subordination agreement" within the meaning of Code § 510, is enforceable in accordance with its terms, and Agents' and Lenders' consent to the entry of this Order will not prejudice any rights of Agents or Lenders under any Subordination Agreement.

18. <u>Modification of Stay</u>. The automatic stay of Code § 362 is hereby modified with respect to Agents and Lenders to the extent necessary to effectuate the provisions of this Order, including, without limitation, after the Termination Date to permit Agents and Lenders to exercise their respective rights contemplated by Paragraph 5 above.

19. <u>No Waiver</u>. None of the Agents or the Lenders will be deemed to have suspended or waived any of their rights or remedies under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer of Agents or Lenders, as applicable, and directed to Debtors. No failure of any Agent or any Lender to require strict performance by any Debtor (or by any Trustee) of any provision of this Order will waive, affect, or diminish any right of Agents or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agents or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents, the Postpetition Documents, the Code, or applicable non-bankruptcy law will preclude the exercise of any right or remedy. Further, this Order does not constitute a waiver by Prepetition Agent or the Prepetition Lenders of any of their rights under the Prepetition Documents, the Code, or applicable non-bankruptcy law, including, without limitation, their right to later assert: (a) that any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof or (b) a claim under Code § 507(b).

20. <u>"Responsible Person"</u>. In determining to extend Postpetition Debt under the Postpetition Loan Agreement, or in exercising any rights or remedies as and when permitted pursuant to this Order, the Final Order, or any of the Postpetition Documents, neither Postpetition Agent nor any Postpetition Lender shall be deemed to be in control of any Debtor or any of its operations or to be acting as a "responsible person" with respect to the operation, management, or sale of any such Debtor.

21. <u>Release</u>. Upon the date that the Postpetition Debt is paid in full in cash and prior to the release of the Postpetition Liens, each Debtor, on behalf of its estate and itself, must execute and deliver to Postpetition Agent and Postpetition Lenders, and each of their respective successors and assigns, and their present and former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents, and other representatives (the "<u>Releasees</u>"), a general release of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that the Debtors had, have or hereafter can or may have against Releasees as of the date hereof, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, in respect of events that occurred on or prior to the date the Postpetition Debt is paid in full.

22. <u>Amendments</u>. Debtors, Postpetition Agent, and Postpetition Lenders may enter into amendments or modifications of the Postpetition Documents or the Budget without any further notice, hearing, or order of this Court; <u>provided</u>, <u>however</u>, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court and provided to the Committee and the United States Trustee, which may request a hearing within five (5) business days of receipt of such notice to assert that any such amendment or modification materially and adversely affects the rights of any creditor or other party-in-interest.

23. <u>Proof of Claim</u>. Neither Prepetition Agent nor any Prepetition Lender are required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order constitute an informal proof of claim in respect thereof.

24. <u>Binding Effect</u>. Except as provided in Paragraph 8 herein, this Order is binding on all parties in interest in the Cases and their respective successors and assigns, including, without limitation, any Trustee, except that any Trustee will have the right to terminate this Order after notice and a hearing, subject to the terms and conditions of this Order. If, in accordance with Code § 364(e), this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order will not affect: (a) subject to Paragraph 8 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by, and the releases contained in, this Order; and (b) the priority, validity, enforceability, or effectiveness of any lien, security interest, or other benefit or claim authorized hereby with respect to Cash Collateral remitted (subject to Paragraph 8 of this Order), or Postpetition Debt incurred, prior to the effective date of such termination or subsequent order. All such liens, security interests, claims, and other benefits will be governed in all respects by the original provisions of this Order, and Postpetition Agent and Postpetition Lenders will be entitled to all of the rights, remedies, privileges, and benefits granted herein, including, without limitation, the liens and priorities granted herein with respect to the Postpetition Debt. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or may be deemed to be, a third party beneficiary of this Order.

25. <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, will survive entry of, and govern in the event of any conflict with, any order that may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, including, without limitation, the rights granted to Postpetition Agent and Postpetition Lenders under Code §§ 364(c) and (d), will continue in full force and effect until all of the Aggregate Debt is indefeasibly paid in full in cash and discharged.

26. <u>Notice of Final Hearing</u>. The Final Hearing is scheduled for _April 15, 2015_, _____, 2015, and may be continued from time to time without further _at 12:30 p.m._

-19-

notice other than that given in open court. Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Agents, any Persons that have asserted a lien or other interest in any of Debtors' assets, Debtors' thirty (30) largest unsecured creditors, all taxing authorities that have, or whom the Debtors believe may, assert claims against the Debtors or any of the Debtors' assets, and the United States Trustee, which service will constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for the Debtors, Agents, and the United States Trustee no later than five (5) business days prior to the commencement of the Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

_____
Honorable Mary F. Walrath
United States Bankruptcy Judge

Dated: March 25, 2015