IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Karmaloop, Inc., et al.,[1] | ) | Case No. 15-10635 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: April 30, 2015 at 11:30 p.m. ET |
| | ) | Objections Due: April 23, 2015 at 4:00 p.m. ET |
| | ) | |

## MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN CRS CAPSTONE PARTNERS, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, AND (II) DESIGNATE BRIAN DAVIES AS DEBTORS' CHIEF RESTRUCTURING OFFICER

Karmaloop, Inc. and KarmaloopTV, Inc., the debtors and debtors in possession (collectively, the "Debtors") in these jointly-administered chapter 11 cases (the "Cases"), file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors to retain CRS Capstone Partners, LLC ("Capstone") to provide the Debtors a Chief Restructuring Officer (the "CRO") and certain additional personnel, in connection with their chapter 11 cases (the "Chapter 11 Cases"), and to employ Brian Davies ("Davies") as the Debtors' CRO, effective nunc pro tunc to the Petition Date (defined below). In support of the Motion, the Debtors rely on and incorporate by reference the Declaration of Brian L. Davies, Jr. in Support of First Day Motions (the "Davies Declaration"), filed on March 23, 2015 [D.I. 3], and the Declaration Of Brian Davies in Support of the Motion of the Debtors Pursuant to 11 U.S.C. §§ 105(a) and 363(b) to (i) Retain CRS Capstone Partners, LLC to Provide the

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Karmaloop, Inc. - 3934; KarmaloopTV, Inc. – 8230. The Debtors' address is 334 Boylston Street, Suite 500, Boston, MA 02116.

Debtors a Chief Restructuring Officer and Certain Additional Personnel, and (ii) Designate Brian Davies as Debtors' Chief Restructuring Officer (the "Capstone Declaration," attached as Exhibit B hereto). In further support of the Motion, the Debtors, by and through their undersigned proposed attorneys, respectfully represent as follows:

I.  **Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Cases and the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3. Pursuant to Rule 9013-1(f) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4. The statutory predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"). With respect to disclosures of connections, this Motion provides disclosures consistent with those otherwise required for retention of estate professionals, pursuant to Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. Background

5. On March 23, 2015 (the "Petition Date"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code. Pursuant to Court order dated March 25, 2015, the Debtors' cases are being jointly administered for procedural purposes only [D.I. 40].

6. The Debtors are authorized to continue to operate their business and manage their property as debtors in possession under Bankruptcy Code sections 1107(a) and 1108. To date, no trustee, examiner, or statutory committee has been appointed in these Cases.

7. The factual background relating to the Debtors and the commencement of these Cases is set forth in the Davies Declaration.

## III. Relief Requested

8. The Debtors request the entry of an order, pursuant to Bankruptcy Code sections 105(a) and 363, (i) authorizing the Debtors to retain Capstone to provide the Debtors with a CRO and certain additional personnel (the "Additional Personnel") in connection with their Chapter 11 Cases, pursuant to the terms set forth herein and as set forth in the engagement letter between the Debtors and Capstone, dated March 18, 2015 (the "Engagement Letter"), a copy of which is attached hereto as Exhibit C and incorporated herein by reference, and (ii) to designate Davies, a principal of Capstone, as the Debtors' CRO, nunc pro tunc to the Petition Date.

9. As CRO, Davies will assist the Debtors in their operations and manage the Debtors' restructuring efforts, including negotiating with parties in interest and providing direction to the Debtors' restructuring professionals and advisors. In accordance with the Engagement Letter, Capstone will also provide staffing at various levels to assist Davies

in efforts to guide the Debtors in these Chapter 11 Cases, including but not limited to providing the Debtors with a Vice President of Finance. The directors and officers of each of the Debtors will continue to have direct oversight and control over Capstone, Davies, and the professionals retained by the Debtors.

### IV. The Retention of Capstone and Davies

#### A. Qualifications

10. The Debtors selected Capstone, Davies and the Additional Personnel (Davies, together with the Additional Personnel, are referred to collectively as the "Engagement Personnel") because of their qualifications and experience as interim managers in numerous comparable engagements. The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. The Engagement Personnel have substantial experience in providing advisory services in restructurings and reorganizations, with a proven ability to meet the needs of debtors and creditors in complex chapter 11 cases similar to these. Capstone and Davies have been engaged previously by several Chapter 11 debtors.

11. Davies is well suited to serve as the Debtors' Chief Restructuring Officer during these Chapter 11 Cases. Davies, a Managing Director of Capstone, has assisted companies through difficult operating and financial environments. He has over a decade of experience providing financial restructuring, interim management, due diligence, and forensic and operational consulting services to business organizations experiencing significant financial difficulties both in and out of formal bankruptcy proceedings. Additionally, he has served as an interim senior-level executive for several of Capstone's clients in the roles of CFO, VP of Finance, and Controller.

12. With the assistance of other members of Capstone and its staff, Davies has become directly involved in the Debtors' business operations and day-to-day functioning. He is therefore familiar with all aspects of the Debtors' affairs, including business operations, strategic planning, financial reporting, legal affairs, and other relevant issues including the Debtors' efforts to address their current financial difficulties, and their preparation for the transition into operation as chapter 11 debtors-in-possession.

13. Since their engagement by the Debtors, Capstone and Davies have devoted substantial amounts of time and effort to, among other things, (i) researching options to maximize the enterprise value of the Debtors, (ii) determining the value of the Debtors' paid and outstanding obligations and accounts receivable, (iii) advising and assisting the Debtors with respect to the potential sale of their business on a going concern basis, (iv) assisting the Debtors with the management and preservation of their the value of their business assets, (v) communicating with the Debtors' prepetition lenders, creditors, and equity holders, (vi) assisting in the development of projections and budget models, and (vii) coordinating the Debtors' efforts to prepare for these chapter 11 filings. Davies and Capstone have provided material contributions to the Debtors throughout this process, benefitting the Debtors' many stakeholders.

14. In assisting the Debtors with the filing of these Chapter 11 Cases, and as a result of Davies's thorough review of the Debtors' pre-petition affairs as described in the Capstone Declaration, Davies and the Additional Personnel have become intimately familiar with the financial and factual circumstances underlying these Chapter 11 Cases. The retention of Davies and Capstone, with their knowledge of and experience with the Debtors and the industry in which they operate, will assist in the efficient administration

of the estates, thereby minimizing expense to the estates and maximizing the returns available to creditors and equity holders.

15. In addition to retaining Davies and Capstone pursuant to this Motion, the Debtors are also submitting separate applications to retain Burns & Levinson LLP and Womble Carlyle Sandridge & Rice, LLP as their counsel. Davies and Capstone are familiar with and have worked together with Burns & Levinson on numerous other occasions. Their experience in working cooperatively together will benefit the Debtors and create further efficiencies in the administration of these Chapter 11 Cases. All three firms worked in close coordination in the preparation of the Debtors' Chapter 11 Cases prior to the Petition Date.

### B. Services to Be Provided

16. Pursuant to the Engagement Letter, Capstone has agreed to provide the interim management services of Davies, who shall serve as CRO for each of the Debtors as of the Petition Date.

17. Among other things, the Engagement Personnel will support the Debtors with respect to the following:

(a) representation of the Debtors' interests in the Chapter 11 Cases, including coordination with Debtors' legal counsel on all of the Debtors' legal matters;

(b) assist with the case administration and reporting associated with a Chapter 11 filing, including but not limited to, preparation of schedules and statements, monthly operating reports, claims reconciliation, assumption and rejection analyses;

(c) management of any proposed sale process with respect to the sale, merger, or other disposition of any stock, assets, or businesses of the Debtors;

(d) service as the principal contact with the Debtors' creditors, equity holders, vendors, and other parties in interest with respect to the Debtors' financial and operational matters, and responding to inquiries or negotiations related to the same;

(e) control and coordination over the Debtors' deposit and other accounts;

(f) supervision of all finance, accounting, and treasury functions;

(g) supervision and assistance with preparation of all financial information required for distribution to the Office of the United States Trustee, creditors, and other parties in interest;

(h) analysis of potential avoidance, fraudulent transfer, and preferential transfer causes of action;

(i) analysis of and objections to claims;

(j) assistance in the negotiation, drafting, and confirmation of any plan in the Chapter 11 Cases; and

(k) other activities as approved and/or suggested by the Debtors' officers and its counsel, and as agreed to by Davies and Capstone.

C. **Professional Compensation**

18. Subject to this Court's approval, Capstone will charge the Debtors a weekly rate of $45,000 for the full time services of the CRO. Additional Capstone resources will be provided based on weekly time incurred by assigned Capstone staff at standard hourly rates as follows:

| Title | Hourly Rate |
| --- | --- |
| Senior Partners and Managing Director | $425-$375 |
| Principals and Directors | $350-$300 |
| Senior Vice Presidents and Vice Presidents | $275-$250 |

| Senior Associates and Associates | $225 |
| Analyst | $175 |

Capstone will also request reimbursement for all reasonable costs and expenses, including, without limitation, travel, photocopying, delivery services, postage, and vendor charges.

19. Capstone will maintain contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of its restructuring and management services as generally required by the rules applicable to professionals engaged by the Debtors, provided, however, that Capstone shall not be required to maintain time in tenth of an hour increments.

20. Because Capstone is not being employed for its interim management services as a professional under Bankruptcy Code section 327, it will not be required to submit fee applications pursuant to Bankruptcy Code sections 330 and 331. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under Bankruptcy Code section 363 (referred to as the "J. Alix Protocol") or (the "Protocol"), Capstone intends to file with the Court and serve on the Debtors, the U.S. Trustee, and any Official Committee of Unsecured Creditors appointed in these cases (the "Committee" and, together with the Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report will include the names and functions filled by all Capstone personnel assigned to this engagement. The Staffing Report (and

Capstone's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

21. In addition, Capstone will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis. The Compensation Reports will summarize the service provided, identify the compensation earned, itemize expenses incurred, and provide for an objection period of no less than twenty-one (21) days from the filing of a Compensation Report. All such compensation would be subject to review by this Court if a timely objection is filed.

**D. Compensation Received by Capstone and Davies from the Debtors prior to the Petition Date**

22. As set forth in the Capstone Declaration, Capstone received an advance fee payment of $150,000 (the "Prepetition Advance Fee"), which upon information and belief was generated by the Debtors from their operations or other income. The Prepetition Advance Fee was provided to Capstone in contemplation of rendering restructuring and management services for the benefit of the Debtors.

23. Prior to the filing of these Chapter 11 Cases, Capstone invoiced the Debtors for its pre-petition services rendered and expenses incurred, it applied the Prepetition Advance Fee to their invoice balances, and additional funds were advanced to restore the original amount of the Prepetition Advance Fee. The total amount of pre-petition billings by and payment to Capstone was $297,612. As of the Petition Date, there is a remaining available balance of $150,000 presently being held by Capstone in an interest-bearing client funds account, as security for payment for future services to be rendered to and on behalf of the Debtors during these Chapter 11 Cases. The Prepetition

Advance Fee shall be credited against any amounts due at the termination of the Engagement Letter and returned to the Debtors upon the satisfaction of all obligations owed to Capstone thereunder. This Prepetition Advance Fee is not intended to be applied until alternative sources of payment have been pursued.

24. Neither Capstone nor Davies has received any other payment from the Debtors or any other related party in connection with these Chapter 11 Cases. Immediately prior to the filing of the Debtors' Chapter 11 petitions, Capstone held no receivable balance for outstanding services rendered to the Debtors.

E.  **Indemnification**

25. Section 6 of the Engagement Letter incorporates by reference a separate Indemnification Agreement between Capstone, Davies, and the Debtors. It provides:

> The Debtor, or its survivor, shall: (i) indemnify and hold harmless Capstone, its officers, directors, members, managers, employees, affiliates, consultants and agents or assignees (collectively the "Capstone Indemnified Persons") from and against any and all losses, claims, damages or liabilities to which any Capstone Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder except to the extent it is finally determined by a court or arbitral tribunal that such losses, claims, damages or liabilities are solely the result of Capstone's gross negligence or willful misconduct; and (ii) reimburse each Capstone Indemnified Person promptly for all legal and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by Capstone hereunder, except with respect to any matter with respect to which Capstone is required to indemnify the Debtor pursuant to this Section 6.
>
> Likewise, Capstone shall indemnify and hold harmless the Debtor, its officers, directors, members, managers, employees, affiliates, consultants and agents or assignees (collectively the "Debtor Indemnified Persons") from and against any and all losses, claims, damages or liabilities to which any Debtor Indemnified Person

may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder to the extent it is finally determined by a court or arbitral tribunal that such losses, claims, damages or liabilities are solely the result of Capstone's gross negligence or willful misconduct. The aggregate amount of any such losses, claims, damages, or liabilities against Capstone shall be capped at the amount of fees actually received by Capstone from the Debtor hereunder.

The Debtor and Capstone agree that the indemnification and reimbursement commitments set forth in this Section 6 shall apply whether or not Capstone, the Debtor, any Capstone Indemnified Person, or any Debtor Indemnified Person is a formal party to any lawsuit, investigation, claim or other proceeding and whether or not any such Capstone Indemnified Person or Debtor Indemnified Person is at the time affiliated with Capstone or the Debtor, respectively. The Debtor and Capstone further agree that, without the other party's prior written consent, such consent not to be unreasonably withheld or delayed, they will not enter into any settlement of a lawsuit, claim or other proceeding arising out of the transactions contemplated by this Agreement to which the Debtor, Capstone, any Capstone Indemnified Person or any Debtor Indemnified Person is an actual party or, in the reasonable judgment of the such party, is a potential party, unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of all parties seeking or providing indemnification.

If indemnification is to be sought hereunder, then the party seeking indemnification shall notify the indemnifying party of the commencement of any action or proceeding in respect thereof; provided, however, that the failure to so notify the indemnifying party shall not relieve the indemnifying party from any liability that they may have to such party seeking indemnification pursuant to this Section 6 except to the extent the indemnifying party has been prejudiced in any material respect by such failure or from any liability that they may have to the party seeking indemnification other than pursuant to this Section 6. Notwithstanding the above, following such notification, the indemnifying party may elect in writing to assume the defense of such action or proceeding, and, upon such election, they shall not be liable for any legal costs subsequently incurred by such party seeking indemnification (other than reasonable costs of investigation and providing evidence) in connection therewith, unless (i) they have failed to provide counsel reasonably satisfactory to such party seeking indemnification in a timely manner, (ii) counsel which has been provided by the indemnifying party reasonably determines that its representation of

such party seeking indemnification would present it with a conflict of interest or (iii) the party seeking indemnification reasonably determines that there may be legal defenses available to it which are different from or in addition to those available to the party providing indemnification and such party seeking indemnification reasonably determines that the counsel which has been provided by the party providing indemnification would have a conflict of interest with respect to such legal defenses. In connection with any one action or proceeding, the party providing indemnification shall not be responsible for the fees and expenses of more than one separate law firm in any one jurisdiction for all parties seeking indemnification.

26. Capstone recognizes and will abide by the governing procedures for indemnification in this Court, and as such the proposed order on this Motion provides for appropriate modification of Capstone's indemnification provisions.

F. **Capstone's Disinterestedness**

27. To the best of the Debtors' knowledge, and as disclosed herein and in the Capstone Declaration: (i) Capstone and Davies each is a "disinterested person" within the meaning of Bankruptcy Code section 101(14), as would be required by Bankruptcy Code section 327(a) for an estate professional, and neither Davies nor Capstone holds or represents any interest adverse to the Debtors' estates; (ii) neither Capstone nor Davies has any connection to the Debtors, their creditors or any related parties, except that Capstone and Davies were retained by the Debtors' to provide pre-petition management and restructuring advice and that it has been compensated by the Debtors for its services, all as is disclosed in the Capstone Declaration; and (iii) neither Capstone nor Davies holds a pre-petition claim against either Debtor.

28. After a thorough review of Capstone's client management database, Capstone and Davies have not identified any prior relationships that they may have with any identified interested parties. Notwithstanding these efforts to identify and disclose

any of Capstone's or Davies's potential connections or conflicts with any interested parties in these Chapter 11 Cases, because both they and the Debtors' investments and operations are broad and multifaceted, Capstone and Davies are unable to state with certainty that every relationship or potential conflict could reasonably be identified and that they have been disclosed in the Capstone Declaration. Capstone will review its files against any new creditors or other interested parties identified by it or the Debtors from time to time during the pendency of these Chapter 11 Cases. If any new relevant facts or relationships are discovered or arise in such review, Capstone will use reasonable efforts to identify such further developments and, where appropriate, will file a supplemental declaration promptly.

### V.     Basis for Relief

29.     Bankruptcy Code section 363 provides that, after notice and a hearing, a debtor may use property of the estate other than in the ordinary course of business. "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999); see also In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

30.     Bankruptcy Code section 363 also authorizes the Debtors to enter into certain transactions and use property of the estate in the ordinary course of business. As is proposed by this Motion, the Debtors' retention of Capstone as its restructuring consultants and Davies as an interim corporate officer is proper under Bankruptcy Code section 363. This Court has authorized retention of officers utilizing this provision of the Bankruptcy Code on numerous occasions. See, e.g., In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 20, 2012); In re Filene's Basement, LLC, Case No.

11-13511 (KJC) (Bankr. D. Del. Jan. 24, 2012); In re Harry & David Holdings, Inc., Case No. 11-10884 (MFW) (Bankr. D. Del. April 27, 2011); In re Trico Marine Services, Inc., Case No. 10-12653 (BLS) (Bankr. D. Del. Oct, 6, 2010); In re Orleans Homebuilders Inc., Case No. 10-10684 (PJW) (Bankr. D. Del. Apr. 6, 2010); and In re Hines Horticulture, Inc., Case No. 08-11922 (KJC) (Bankr. D. Del. Oct. 1, 2008).

31. Once a debtor articulates a valid business justification, "the business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985); Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984); In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992). The business judgment rule has vitality in chapter 11 cases and shields a debtor's management "from judicial second-guessing." In re Integrated Resources, Inc., 147 B.R. at 656 (S.D.N.Y. 1992); Van Gorkom, 488 A.2d at 872-73; In re Johns-Manvile Corp., 60 B.R. 612, 615-16 (Bank. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.")

32. In addition, because the Debtors are not seeking to retain Capstone as a professional under Bankruptcy Code section 327 for interim management services, there is no requirement that Capstone, Mr. Davies, or any of the Additional Personnel be disinterested to be retained to provide interim management services. Nevertheless, as detailed above in support of Capstone's retention to provide services in these cases, to the best of the Debtors' knowledge, Capstone and Davies are each disinterested parties.

33. The Debtors further believe that the employment of Capstone would be in the best interests of the Debtors and their estates, and they desire to employ Capstone, effective as of the Petition Date, with compensation as described herein. Both Capstone and Davies are qualified for the positions for which they are to be employed.

34. The Debtors have determined that the compensation terms of the Engagement Letter are within the range for executive officers employed with sophisticated investment funds of comparable size, value and reputation to those of the Debtors. Accordingly, the Debtors' decision to enter into the Engagement Letter reflects a valid exercise of the Debtors' sound business judgment.

35. Were the Debtors required to engage an executive officer other than Davies and advisors other than Capstone in connection with these proceedings, the Debtors, their estates and all parties in interest would be unduly prejudiced by the time and expense necessarily attendant to such officers' and advisors' familiarization with the intricacies of the Debtors' businesses, present circumstances, and financial affairs.

## VI. Notice

36. Notice of this Motion has been given to: (a) the Office of the United States Trustee; (b) holders of the thirty (30) largest unsecured claims on a consolidated basis against the Debtors; and (c) all other parties requesting notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtors respectfully submit that further notice of this Motion is neither required nor necessary.

## VII. No Prior Request

37. The Debtors have not previously sought the relief requested herein from this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>, authorizing and approving the retention and employment by the Debtors of Capstone as their management and restructuring advisors and Brian Davies as Chief Restructuring Officer of each of the Debtors, effective as of the Petition Date; and granting such further relief as this Court deems just and equitable.

Dated: April 2, 2015

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**

/s/ Steven K. Kortanek
Steven K. Kortanek (Del. Bar No. 3106)
Ericka F. Johnson (Del. Bar No. 5024)
Morgan L. Patterson (Del. Bar No. 5388)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail: skortanek@wcsr.com
E-mail: erjohnson@wcsr.com
E-mail: mpatterson@wcsr.com

-and-

**BURNS & LEVINSON LLP**
Scott H. Moskol
Michael V. Samarel
Tal M. Unrad
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299
E-mail: smoskol@burnslev.com
E-mail: msamarel@burnslev.com
E-mail: tunrad@burnslev.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*