# EXHIBIT B

## Capstone Declaration

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Karmaloop, Inc., et al.,[1] | ) | Case No. 15-10635 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF BRIAN DAVIES IN SUPPORT OF THE MOTION OF THE DEBTORS PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b) TO (I) RETAIN CRS CAPSTONE PARTNERS, LLC TO PROVIDE THE DEBTORS A CHIEF RESTRUCTURING OFFICER AND CERTAIN ADDITIONAL PERSONNEL, AND (II) DESIGNATE BRIAN DAVIES AS DEBTORS' CHIEF RESTRUCTURING OFFICER**

I, Brian Davies, being duly sworn according to law, depose and state that:

1. I am a Managing Director of the firm of CRS Capstone Partners, LLC ("Capstone"), with its principal offices located at 176 Federal Street, Boston, Massachusetts. I submit this Declaration in support of the entry of an order authorizing (i) the retention of Capstone to provide the above captioned debtors and debtors-in-possession (the "Debtors") a CRO, and (ii) the Debtors to designate me as CRO for the Debtors in these chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (as amended, the "Bankruptcy Code"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Karmaloop, Inc. - 3934; KarmaloopTV, Inc. – 8230. The Debtors' address is 334 Boylston Street, Suite 500, Boston, MA 02116.

A.  **Capstone's Qualifications**

2. Capstone is a financial advisory, restructuring, and consulting firm. Capstone's principal offices are located in Boston, with additional offices located in Chicago, Los Angeles, Philadelphia, San Diego, Silicon Valley, and London.

3. The Debtors selected Capstone to provide CRO services and the Additional Personnel (Davies and the Additional Personnel are referred to henceforth as the "Engagement Personnel") because of their qualifications and experience as interim managers in numerous comparable engagements. The Engagement Personnel specialize in interim management, turnaround consulting, operational due diligence, creditor advisory services, and financial and operational restructuring. The Engagement Personnel have substantial experience in providing advisory services in restructurings and reorganizations, with a proven ability to meet the needs of debtors and creditors in complex chapter 11 cases similar to these. Capstone, and I personally, have been engaged previously by several Chapter 11 debtors.

4. I believe I am well suited to serve as the Debtors' Chief Restructuring Officer during these Chapter 11 Cases. I have over a decade of experience providing interim management and advisory services, in connection with turnarounds, financial reorganizations and asset sales, both in and out of court. Prior to joining Capstone, I worked at ACM Capital Partners, where I specialized in providing interim management and financial advisory services to financially distressed companies. I began my career in finance at Arthur Andersen's Corporate Finance group in Boston, later becoming a Managing Director and Co-head of the New England practice for KPMG and Mesirow Financial Consulting's Corporate Restructuring Group. Following Mesirow, I served as an Operating Partner at H.I.G. Capital, a leading global private equity firm. I hold a Bachelor of Science degree in Finance from Bentley University and a Master of Science in Finance from The McCallum School at Bentley University.

5. With the assistance of other members of Capstone and its staff, I have become directly involved in the Debtors' business operations and day-to-day functioning. I am therefore familiar with all aspects of the Debtors' affairs, including business operations, strategic planning, financial reporting, legal affairs, and other relevant issues including the Debtors' efforts to address their current financial difficulties, and their preparation for the transition into operation as chapter 11 debtors-in-possession.

6. Since our engagement by the Debtors, Capstone and I, along with the Additional Personnel, have devoted substantial amounts of time and effort to, among other things, (i) researching options to maximize the enterprise value of the Debtors, (ii) determining the value of the Debtors' paid and outstanding obligations and accounts receivable, (iii) advising and assisting the Debtors with respect to the potential sale of their business on a going concern basis, (iv) assisting the Debtors with the management and preservation of their the value of their business assets, (v) communicating with the Debtors' prepetition lenders, creditors, and equity holders, (vi) assisting in the development of projections and budget models, and (vii) coordinating the Debtors' efforts to prepare for these chapter 11 filings. Capstone and I have provided material contributions to the Debtors throughout this process, benefitting the Debtors' many stakeholders.

7. In assisting the Debtors with the filing of these Chapter 11 Cases, and as a result of my thorough review of the Debtors' pre-petition affairs, each of the Engagement Personnel has become intimately familiar with the financial and factual circumstances underlying these Chapter 11 Cases. My appointment as CRO, and the work performed by the Additional Personnel provided by Capstone, with their knowledge of and experience with the Debtors and the industry in which they operate, will assist in the efficient administration of the estates,

thereby minimizing expense to the estates and maximizing the returns available to creditors and equity holders.

8. On or about March 18, 2015, the Debtors engaged me and Capstone to serve as their Chief Restructuring Officer and to provide other management services to the Debtors. Since our engagement we have carefully reviewed the Debtors' financial circumstances and balances, their outstanding investments, and their financial relationships, obligations and agreements with their existing lenders and debt holders. Additionally, we have begun to provide assistance in the preparation of revised business plans and liquidity forecasts. We have also assisted in the identification, evaluation and implementation of initiatives to improve future liquidity and limit the Debtors' liability to external creditors. I have been the person responsible for Capstone's services since its engagement by the Debtors.

9. Prior to the Petition Date (as defined in the Motion), no Capstone employee was been an Officer of either of the Debtors or non-Debtor subsidiaries.

10. As a result of its pre-petition work for the Debtors, as well as its services rendered preparing these Chapter 11 Cases, Davies and Capstone are familiar with the Debtors' corporate and capital structure, management, industry, and businesses.

**B.     Services To Be Rendered**

11. The Debtors have requested that Capstone provide a CRO to the Debtors, as well as additional personnel to provide business and restructuring management services during the pendency of these Chapter 11 Cases.

12. I will serve as the CRO for the Debtors and will be responsible for managing their day-to-day operations. Additionally, with the assistance of other Capstone personnel, as part of the management and restructuring services we have agreed to provide:

(a) representation of the Debtors' interests in the Chapter 11 Cases, including coordination with Debtors' legal counsel on all of the Debtors' legal matters;

(b) assist with the case administration and reporting associated with a Chapter 11 filing, including but not limited to, preparation of schedules and statements, monthly operating reports, claims reconciliation, assumption and rejection analyses;

(c) management of any proposed sale process with respect to the sale, merger, or other disposition of any stock, assets, or businesses of the Debtors;

(d) service as the principal contact with the Debtors' creditors, equity holders, vendors, and other parties in interest with respect to the Debtors' financial and operational matters, and responding to inquiries or negotiations related to the same;

(e) control and coordination over the Debtors' deposit and other accounts;

(f) supervision of all finance, accounting, and treasury functions;

(g) supervision and assistance with preparation of all financial information required for distribution to the Office of the United States Trustee, creditors, and other parties in interest;

(h) analysis of potential avoidance, fraudulent transfer, and preferential transfer causes of action;

(i) analysis of and objections to claims;

(j) assistance in the negotiation, drafting, and confirmation of any plan in the Chapter 11 Cases;

(k) and other activities as approved and/or suggested by the Debtors' officers and its counsel, and as agreed to by Davies and Capstone.

13. Capstone will take care not to duplicate the efforts of any other professional engaged by the Debtors in these Chapter 11 Cases.

    C. **Capstone's Rates and Billing Practices**

14. Attached as Exhibit C to the Motion is the current retention agreement between Capstone and the Debtors (the "Engagement Letter"). Pursuant to the Engagement Letter,

Capstone has agreed to accept as compensation for its services rendered in connection with these Chapter 11 Cases, the Pre-Petition Advanced Fee (to the extent fully used) and such additional sums as may be allowed by this Court in accordance with any order approving Capstone's retention and applicable law.

15. Subject to this Court's approval, Capstone will charge the Debtors a weekly rate of $45,000 for the full time services of the CRO. Additional Capstone resources will be provided based on weekly time incurred by assigned Capstone staff at standard hourly rates as follows:

| Title | Hourly Rate |
|---|---|
| Senior Partners and Managing Director | $425-$375 |
| Principals and Directors | $350-$300 |
| Senior Vice Presidents and Vice Presidents | $275-$250 |
| Senior Associates and Associates | $225 |
| Analyst | $175 |

16. Capstone will also request reimbursement for all reasonable costs and expenses, including, without limitation, travel, photocopying, delivery services, postage, and vendor charges. Capstone has advised the Debtors that it will charge such costs and expenses in accordance, and only to the extent consistent, with the Del. Bankr. L. Rules and applicable guidelines promulgated by the Office of the United States Trustee (the "UST Guidelines").

17. Capstone will maintain contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of its restructuring and management services as required by the rules applicable to professionals engaged by the Debtors, provided however that Capstone will not record time in tenth of an hour increments.

Because Capstone is not being employed for its interim management services as a professional under Bankruptcy Code section 327, it will not be submitting regular fee applications pursuant to Bankruptcy Code sections 330 and 331. To maintain transparency and to comply with the U.S. Trustee's protocol applicable to the retention of personnel to assist the Debtors under Bankruptcy Code section 363 (the "J. Alix Protocol") or (the "Protocol"), Capstone intends to file with the Court and serve on the Debtors, the U.S. Trustee, and any Official Committee of Unsecured Creditors appointed in these cases (the "Committee" and, together with the Debtors and the U.S. Trustee, the "Notice Parties") a report on staffing (the "Staffing Report") by the 20th of each month for the previous month, which report will include the names and functions filled by all Capstone personnel assigned to this engagement. The Staffing Report (and Capstone's staffing for this matter) would be subject to review by the Court in the event so requested by any of the Notice Parties.

18. In addition, Capstone will file with this Court, and serve upon the Notice Parties, reports of compensation earned and expenses (the "Compensation Reports") incurred on at least a quarterly basis. The Compensation Reports will summarize the service provided, identify the compensation earned, itemize expenses incurred, and provide for an objection period of no less than twenty-one (21) days from the filing of a Compensation Report. All such compensation would be subject to review by this Court if a timely objection is filed.

19. In accordance with Bankruptcy Code sections 329 and 504 and Bankruptcy Rule 2016, I hereby state that neither I nor Capstone has entered into any agreements, express or implied, with any other party in interest, including the Debtors, any creditor, or any attorney for such party in interest in these cases, for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest for services rendered in connection

therewith. Any compensation, fee or allowance which may be claimed by me or Capstone will belong wholly to Capstone and will not be divided, shared or pooled, directly or indirectly, with any other person unaffiliated with Capstone.

### D. Prepetition Compensation Received by Capstone from the Debtors

20. As stated above, prior to the inception of these Chapter 11 Cases, Capstone received an advance fee payment of $150,000, which upon information and belief was generated by the Debtors from their operations or other income. The Pre-Petition Advanced Fee was provided to Capstone in contemplation of rendering restructuring and related services to the Debtors.

21. Prior to the filing of these Chapter 11 Cases, Capstone invoiced the Debtors for its pre-petition services rendered and expenses incurred, it applied the Prepetition Advance Fee to their invoice balances, and additional funds were advanced to restore the original amount of the Prepetition Advance Fee. The total amount of pre-petition billings by and payment to Capstone was $297,612. As of the Petition Date, there is a remaining available balance of $150,000 presently being held by Capstone in an interest-bearing client funds account, as security for payment for future services to be rendered to and on behalf of the Debtors during these Chapter 11 Cases. The Pre-Petition Advanced Fee shall be credited against any amounts due at the termination of the Engagement Letter and returned to the Debtors upon the satisfaction of all obligations owed to Capstone thereunder. This Pre-Petition Advanced Fee is not intended to be applied until alternative sources of payment have been pursued.

22. Capstone has received no other payment from the Debtors or any other related party in these Chapter 11 Cases. Immediately prior to the filing of the Debtors' Chapter 11 petitions, Capstone held no receivable balance for outstanding services rendered to the Debtors.

Based upon the foregoing, I believe that Capstone does not hold any claim against the Debtors for any prepetition services rendered or otherwise.

### E. Capstone's Disclosure Policies and Disinterestedness

23. In preparing this declaration, I caused Capstone and its staff to review its existing list of clients to ensure that we held no interests adverse to those of the Debtors, using as guidance the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Del. Bankr. L. Rules regarding the retention of estate professionals by debtors.

24. Based on this review and the absence of any prior or current representations of any parties known to be creditors, equity holders, or interested parties in these Chapter 11 Cases, and to the best of my knowledge, neither Capstone nor I (i) has any connection with the Debtors, their affiliates, their creditors or any other parties in interest, or their respective attorneys or accountants, except as set forth and disclosed herein and in the attached Exhibit 1; and (ii) holds or represents any interest adverse to the Debtors or their estates with respect to the matters as to which Capstone or I are to be employed. On the basis of the above, I believe Capstone and myself to be "disinterested persons" within the meaning of Bankruptcy Code section 101(14).

25. Other than as set forth herein and in the attached Exhibit 1, through diligent inquiry, we have ascertained no connection, as such term is utilized in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b) and Bankruptcy Rule 2014(a), between Capstone and: (i) the United States Trustee or any person employed by the Office of the United States Trustee; (ii) any of the Debtors' present or expected attorneys, accountants, financial consultants; or (iii) other parties in interest in these cases, except as set forth and disclosed herein. Neither Capstone or I is an insider of any of the Debtors.

26. Notwithstanding my efforts to identify and disclose all of my and Capstone's potential connections with any parties in interest in these Chapter 11 Cases, because the Debtors'

investors, customers, and operations are broad and multifaceted, I am unable to state with certainty that every client relationship or other connection has been disclosed in this Declaration. In this regard, if I discover additional material connections that require disclosure, I (or Capstone) will file a supplemental disclosure with the Court.

27. As part of its practice, Capstone is regularly involved with numerous clients and transactions simultaneously, each of which involves multiple attorneys (which may include Burns & Levinson LLP and Womble Carlyle Sandridge & Rice, LLP), accountants, financial consultants, and investment bankers, and some of which now or may in the future represent claimants and other parties in interest in these Chapter 11 Cases. Capstone has not and will not accept any engagement from any such related parties in relation to the Debtors, their Chapter 11 Cases, or any matters directly relating to these Chapter 11 Cases. Capstone does not presently have any relationship with any such attorneys, accountants, financial consultants, and investment bankers which would be adverse to the Debtors or their estates.

28. Capstone may have worked with certain clients in the past and/or may currently or in the future work with entities, which are known to Capstone only with respect to matters wholly unrelated to the Debtors' Chapter 11 Cases, but which may be parties in interest in these Chapter 11 Cases. To the extent that Capstone discovers any such information or needs to update the information disclosed herein, Capstone will disclose such information by filing a supplemental declaration.

29. The foregoing constitutes the statement of Capstone pursuant to section 363 of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 2, 2015

/s/ Brian Davies
Brian Davies, a Managing Director
CRS Capstone Partners, LLC