# EXHIBIT C

## Engagement Letter



# TRANSACTION ENGAGEMENT AGREEMENT

This Engagement Agreement (the "Agreement") is made by and between Karmaloop, Inc. ("Karmaloop"), having principal place of business at 334 Boylston St, Boston, MA 02116 (together with all of its related subsidiaries, affiliates, successors and assigns, the "Company"), and CRS Capstone Partners LLC whose headquarters is located at 176 Federal St., 3rd Floor, Boston, MA 02110 (together with all of its related subsidiaries, affiliates, successors and assigns, "Capstone"). In consideration of the mutual promises set forth below, the parties agree as follows:

Scope of Services.
As requested by you, Capstone will be engaged to provide a Chief Restructuring Officer and a Vice President of Finance for the Company, as well as at least one additional FTE individual (such three FTE individuals are referred to as the "Initial Committed Personnel"), and such other additional personnel as warranted. The CRO is granted (with support as necessary from the Vice President of Finance and other additional personnel):

a) Authority over all of Borrower's deposit accounts and other accounts (including, without limitation, any Paypal accounts), and authority to direct any cash transfers and manage and approve the day-to-day disbursements and expenses of Loan Parties;
b) Authority for the CRO to manage the sales process with respect to the sale, merger or other disposition of any of the stock, assets or businesses of the Loan Parties (a "Sale"), including, without limitation, the authority to communicate with and to direct the actions of the Company's investment banker, and to negotiate with prospective purchasers regarding any Sale, including with respect to any definitive documentation negotiated in connection with any Sale;
c) Authority for the CRO to file a voluntary petition in bankruptcy, commence any other insolvency proceeding, and negotiate DIP financing and enter into any documentation related thereto;
d) Authority regarding all vendor and creditor negotiations and communications;
e) Approval rights with respect to all cash forecasts and financial statements submitted to the Agent(s) and the Lenders; and
f) Approval (or veto) rights with respect to any changes to employee compensation or contracts.

With respect to any Chapter 11 case commenced by the Company, the CRO, with support from the Vice President of Finance and other additional personnel, shall:

a) Pursue the Debtor's interest in such bankruptcy case and related proceedings;
b) Serve as the principal contact with the Debtor's creditors, equity holders and others with respect to the Debtor's financial and operational matters;
c) Open and close bank and investment accounts as needed for the bankruptcy case;
d) Respond to inquiries from creditors, equity holders and other interested parties;
e) Coordinate with the Debtor's legal counsel on all legal matters including but not limited to the bankruptcy case and preparation of the schedule and statements;
f) Supervise all finance, accounting and treasury functions;
g) Supervise and assist in the preparation of all financial information as required for distribution to creditors and others, specifically including all monthly operating reports as required by the office of the United States Trustee;
h) Have full access to all the Debtor's books and records as is necessary and appropriate;



i) Analyze the Debtor's rights, if any, with respect to potential avoidance actions, fraudulent conveyances and preferential payments and transfers ("Avoidance Actions");
j) Analyze if appropriate, object to Claims and settle such objections;
k) Engage in contingency planning if needed;
l) Attend meetings required to perform the duties of the CRO;
m) Assist in the negotiation, drafting and confirmation of a Chapter 11 Plan; and
n) Perform such other services as requested and agreed to by the CRO.

Capstone accepts the above engagement and agrees to devote commercially reasonable time and effort to advise the Debtor and to assist the Debtor with the Restructuring Services on terms acceptable to the Debtor. Capstone, for all purposes hereunder, shall be an independent contractor. This Agreement is not intended in any way to create the relationship of principal or agent between the Debtor and Capstone, nor shall this Agreement be deemed to have established a partnership or joint venture.

The Debtor acknowledges that Capstone has been retained hereunder solely to provide furnish the Initial Committed Personnel to the Debtor (and such additional personnel as may be necessary from time to time), and not as an advisor to or agent of any other person, and that the engagement of Capstone is as an independent contractor and not in any other capacity including as a fiduciary. Neither this agreement nor Capstone's performance hereunder nor any previous or existing relationship between Capstone and the Debtor will be deemed to create any fiduciary relationship. The Debtor further acknowledges that it is not relying on the advice of Capstone for tax, legal or accounting matters, and will rely on the advice of its own professionals and advisors for such matters and will make an independent analysis and decision regarding any Transaction based upon such advice.

Section 3: Professional Service Fees. As compensation for Interim management and Restructuring Services rendered hereunder by Capstone, the Debtor agrees to pay Capstone a refundable retainer of $150,000 payable upon execution of this Agreement (the "Retainer"). The Retainer will be held as a deposit and applied to the final billing. The Restructuring Services provided by the Initial Committed Personnel will be billed to the Debtor at a weekly rate of $45,000. Additional Capstone resources will be provided and billed based on weekly time incurred by assigned Capstone staff, at standard hourly rates, as follows:

| Title | Hourly Rate |
|---|---|
| Senior Partners and Managing Director | $425 - $375 |
| Principals and Directors | $350 - $300 |
| Senior Vice Presidents and Vice Presidents | $275 - $250 |
| Senior Associates and Associates | $225 |
| Analyst | $175 |

Invoices will be presented weekly and are due upon presentation. Invoices which remain unpaid after 30 days will accrue simple interest at the rate of 1.5% per month. We reserve the right to defer rendering further services until payment is received on past due invoices, and all fees and expenses incurred to date must be paid prior to the issuance of reports or the rendering of deposition or trial testimony. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed upon written notification of termination, and the Debtor will be obligated to compensate us for all fees and



expenses incurred through the date of termination. If collection procedures are required, the Debtor agrees to pay all expenses of collection, including attorneys' fees. Capstone will also be reimbursed for our reasonable out-of-pocket expenses incurred in rendering our services, including without limitation travel, photocopying, delivery services, postage and vendor charges.

Section 4: Term and Termination. This letter agreement will terminate on the completion by Capstone of the services to be provided hereunder; provided, that either party may terminate this letter agreement at any time by giving written notice. Termination shall not affect our right to receive payment for services performed, or reimbursement for expenses incurred, in accordance with the terms of this letter agreement. The Debtor and Capstone expressly acknowledge and agree that the provisions of Sections 3 through 11, inclusive, shall survive any termination of this Agreement.

Section 5: Representations. The Debtor represents and warrants that the Debtor, to the best of its knowledge, is now and shall remain in material compliance with all local, state, and federal laws, rules, and regulations materially affecting the operation of the Debtor.

Section 6: Indemnification. The Debtor, or its survivor, shall: (i) indemnify and hold harmless Capstone, its officers, directors, members, managers, employees, affiliates, consultants and agents or assignees (collectively the "Capstone Indemnified Persons") from and against any and all losses, claims, damages or liabilities to which any Capstone Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder except to the extent it is finally determined by a court or arbitral tribunal that such losses, claims, damages or liabilities are solely the result of Capstone's gross negligence or willful misconduct; and (ii) reimburse each Capstone Indemnified Person promptly for all legal and other expenses reasonably incurred by it in connection with investigating, preparing to defend or defending, or providing evidence in or preparing to serve or serving as a witness with respect to, any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by Capstone hereunder, except with respect to any matter with respect to which Capstone is required to indemnify the Debtor pursuant to this Section 6.

Likewise, Capstone shall indemnify and hold harmless the Debtor, its officers, directors, members, managers, employees, affiliates, consultants and agents or assignees (collectively the "Debtor Indemnified Persons") from and against any and all losses, claims, damages or liabilities to which any Debtor Indemnified Person may become subject arising in any manner out of or in connection with the rendering of services by Capstone hereunder to the extent it is finally determined by a court or arbitral tribunal that such losses, claims, damages or liabilities are solely the result of Capstone's gross negligence or willful misconduct. The aggregate amount of any such losses, claims, damages, or liabilities against Capstone shall be capped at the amount of fees actually received by Capstone from the Debtor hereunder.

The Debtor and Capstone agree that the indemnification and reimbursement commitments set forth in this Section 6 shall apply whether or not Capstone, the Debtor, any Capstone Indemnified Person, or any Debtor Indemnified Person is a formal party to any lawsuit, investigation, claim or other proceeding and whether or not any such Capstone Indemnified Person or Debtor Indemnified Person is at the time affiliated with Capstone or the Debtor, respectively. The Debtor and Capstone further agree that, without the other party's prior written consent, such consent not to be unreasonably withheld or delayed, they will not enter into any settlement of a lawsuit, claim or other proceeding arising out of the transactions contemplated by this Agreement to which the Debtor, Capstone, any Capstone Indemnified Person or any Debtor Indemnified Person is an actual party or, in the reasonable judgment of the such party, is a



potential party, unless such settlement includes an explicit and unconditional release from the party bringing such lawsuit, claim or other proceeding of all parties seeking or providing indemnification.

If indemnification is to be sought hereunder, then the party seeking indemnification shall notify the indemnifying party of the commencement of any action or proceeding in respect thereof; provided, however, that the failure to so notify the indemnifying party shall not relieve the indemnifying party from any liability that they may have to such party seeking indemnification pursuant to this Section 6 except to the extent the indemnifying party has been prejudiced in any material respect by such failure or from any liability that they may have to the party seeking indemnification other than pursuant to this Section 6. Notwithstanding the above, following such notification, the indemnifying party may elect in writing to assume the defense of such action or proceeding, and, upon such election, they shall not be liable for any legal costs subsequently incurred by such party seeking indemnification (other than reasonable costs of investigation and providing evidence) in connection therewith, unless (i) they have failed to provide counsel reasonably satisfactory to such party seeking indemnification in a timely manner; (ii) counsel which has been provided by the indemnifying party reasonably determines that its representation of such party seeking indemnification would present it with a conflict of interest or (iii) the party seeking indemnification reasonably determines that there may be legal defenses available to it which are different from or in addition to those available to the party providing indemnification and such party seeking indemnification reasonably determines that the counsel which has been provided by the party providing indemnification would have a conflict of interest with respect to such legal defenses. In connection with any one action or proceeding, the party providing indemnification shall not be responsible for the fees and expenses of more than one separate law firm in any one jurisdiction for all parties seeking indemnification.

Section 7: Confidentiality. Any materials prepared by Capstone and any advice rendered by Capstone to the Debtor are solely for the Debtor's confidential use and may not be reproduced, summarized, referred to, disclosed publicly or given to any other person or entity other than the Debtor's legal and accounting advisors (or as required by law). Any disclosure of or description of the services that Capstone performs under this Agreement must be agreed to in advance by Capstone.

Any proprietary information provided to Capstone by the Debtor shall be held in confidence and be used only for the purpose proposed herein. Upon termination of this Agreement, Capstone (at the Debtor's option) hereby agrees to return all proprietary information provided by the Debtor, except that Capstone shall be able to retain copies of any such materials it deems in its sole discretion to be commercially appropriate working papers kept in confidence by Capstone for regulatory record keeping purposes. The confidentiality of said proprietary information shall survive the termination of this Agreement. Nevertheless, Capstone will be free to disclose any proprietary information obtained from the Debtor to the extent that such disclosure: (i) has been consented to by the Debtor; or (ii) is required by law, regulation, judicial or governmental order, subpoena or other legal process or is requested or required by any governmental authority or regulatory agency including, without limitation, any disclosure that Capstone may be required to make pursuant to internal risk control procedures in connection with any related financing that Capstone may arrange, so long as Capstone uses commercially reasonable efforts to provide the Debtor prior written notice of such disclosure at least 5 days prior to such disclosure.

Section 8: Forbearance. Any forbearance by Capstone or the Debtor in exercising any of its rights under this Agreement shall not be considered a waiver of such right(s). Any waiver must be expressly granted in writing and a waiver on any one occasion shall not be construed as a waiver on any future occasion.



Section 9: Notification. Any notices pursuant to this Agreement shall be in writing and shall be deemed sufficiently given when sent and on the date of posting, by certified mail, return receipt requested, overnight delivery or similar messenger service, to the respective addresses of the Debtor and Capstone set forth above, or to any other address specified by any party by written notice to the other party.

Section 10: Governance. This Agreement incorporates the entire understanding between the Debtor and Capstone and supersedes all previous agreements relating to the subject matter hereof. This Agreement may not be amended or modified except in a writing signed by the Debtor and Capstone. This Agreement shall be binding upon and inure to the benefit of the Debtor and Capstone and their respective successors and assigns. If any term or provision of this Agreement shall to any extent be deemed illegal, invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

This Agreement shall be governed by and construed and enforced in accordance with the laws of The Commonwealth of Massachusetts. The Debtor and Capstone hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the United States District Court located in the City of Boston and, in the event such United States District Court does not have jurisdiction over the parties hereto, then to the courts of The Commonwealth of Massachusetts located in Suffolk County for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action or other proceeding except in such courts. The Debtor and Capstone further agree that service of any process, summons, notice or document by mail to their respective addresses set forth above shall be effective service of process for any lawsuit, action or other proceeding brought against either party in any such court. The Debtor and Capstone hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of The Commonwealth of Massachusetts or the United States District Court located in the City of Boston, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum. Any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or relating to this Agreement or the services to be rendered by Capstone hereunder is expressly and irrevocably waived.

Section 11: Arbitration. Any controversy or claim arising out of or relating to the services or fees set forth herein shall be settled by binding arbitration, administered by the American Arbitration Association in accordance with its commercial arbitration rules, and determination of the fees rendered by the arbitrator may be entered in any court having jurisdiction thereof. Each party shall bear its own costs and expenses of arbitration, and shall share equally the costs of the arbitrator and the administrative fees and costs of arbitration. The arbitration award shall be made within nine months of the notice of intent to arbitrate given by either party, and the arbitrator shall agree to comply with this schedule before accepting appointment.

This Agreement has been and is made solely for the benefit of the Debtor, Capstone and their respective successors and assignees, and no other person shall acquire or have any right under or by virtue of this Agreement. By signing below, both parties hereby understand and agree to the full terms, conditions and provisions of this Agreement and further represent and warrant that the undersigned constitute all, or the authorized representative of all, of the owners, partners and shareholders of the Debtor and Capstone, respectively, and that they are duly authorized to enter into this Agreement which shall be binding and enforceable in accordance with its terms.



ON BEHALF OF CAPSTONE:

Brian L. Davies Jr.
Managing Director

Date: 3/18/2d5

ON BEHALF OF Karmaloop, Inc.

Greg Selkoe
CEO and Founder

Date: 3/18/2015