## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Karmaloop, Inc., et al.,[1] | ) | Case No. 15-10635 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: May 28, 2015 at 2:00 p.m. (ET)** |
| | ) | **Objection Deadline: May 21, 2015 at 4:00 p.m. (ET)** |
| | ) | |

## APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(e) AUTHORIZING EMPLOYMENT AND RETENTION OF BURNS & LEVINSON LLP AS SPECIAL COUNSEL FOR DEBTORS-IN-POSSESSION NUNC PRO TUNC TO THE PETITION DATE

Karmaloop, Inc. and KarmaloopTV, Inc., debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby move for entry of an order under 11 U.S.C. § 327(e) authorizing the employment and retention of Burns & Levinson LLP ("B&L") as special counsel for the Debtors *nunc pro tunc* to the Petition Date (defined below) and extending either (i) to April 27, 2015, or in the alternative (ii) for the duration of this case in place of its 327(a) retention.  In support of this Application, the Debtors rely on the Declarations of Scott H. Moskol , Esq. Pursuant to Bankruptcy Rules 2014 and 2016 (i) in Support of Application of the Debtors for an Order Authorizing Employment and Retention of Burns & Levinson LLP as Counsel for Debtors-in-Possession *Nunc Pro Tunc* to the Petition Date [Docket No. 81-2], including the Supplemental Declaration of Scott H. Moskol, Esq. in support of said Application [Docket No. 178] ] (collectively, the "Moskol 327(a) Declaration"), and

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Karmaloop, Inc. – 3934 and KarmaloopTV, Inc. – 8230.  The Debtors' address is 334 Boylston Street, Suite 500, Boston, MA 02116.

(ii) in Support of Application for Order Under 11 U.S.C. § 327(e) Authorizing

Employment and Retention of Burns & Levinson LLP as Special Counsel for Debtors-

in-Possession *Nunc* *Pro* *Tunc* to the Petition Date , filed herewith (the "Moskol 327(e)

Declaration"; collectively, the "Moskol Declarations").  In further support of this

Application, the Debtors represent as follows:

## I.    Jurisdiction and Venue

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334, and the Amended Standing Order of Reference from the United

States District Court for the District of Delaware dated as of February 29, 2012.

Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      The statutory predicate for the relief sought herein is section 327(e)

of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy

Code").  Relief is also appropriate under Rules 2014 and 2016 of the Federal

Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

## II.    Basis for Requested Relief

3.      On April 30, 2015 (the "Retention Hearing Date"), this Court heard

argument and ruled upon the Application for Order Under 11 U.S.C. § 327(a)

Authorizing Employment and Retention of Burns & Levinson LLP as Counsel for

Debtors-in-Possession *Nunc Pro Tunc* to the Petition Date (the "327(a)

Application"), and therefor authorized employment of B&L as counsel for the

Debtors.  However, rather than granting such relief to be effective *nunc pro tunc*

to the Petition Date, such relief was granted effective only to April 27, 2015 (the

"327(a) Retention Date") based upon the Court's determination that ownership of

certain notes and equity in one of the Debtors held by family members of two

B&L partners until that date placed the firm in the position of holding interests

adverse to the Debtors' estates, and therefore disqualified the firm from approval

as counsel under the standards of 327(a), until that date when those family

members transferred those interests to charities.  By this application, B&L

respectfully asks this Court to consider its retention under 327(e) for the five week

period from the Petition Date (March 23, 2015) to the 327(a) Retention Date (such

period to be referred herein as the "Gap Period").

      4.      Because the Retention Hearing Date occurred five weeks into these

cases, B&L had by then rendered significant, valuable and critical services to the

Debtors during the Gap Period that were fundamental to the prosecution of these

Chapter 11 proceedings, including the DIP loan negotiations and approval,

preparation submission and approval of 363 Bid Procedures, and the 363 Sale

Motion that is anticipated to be the touchstone of the Debtors' exit from Chapter

11.  These corporate services performed by B&L would ordinarily be

unquestionably compensated under 327(a) retention, but for the disqualification

standards imposed under that statute that barred B&L from such recovery for

services rendered during the Gap Period.  However, 327(e) poses a less stringent

standard when evaluating counsel's qualification, and would foster B&L to be

rightfully retained for these services during the Gap Period, as the *interests*

*adverse to the Debtors' estates* cited for 327(a) disqualification do not present *interests adverse to the matters for which counsel is requesting to be employed*, under 327(e) standards.

5.     The prospect of B&L applying for 327(e) qualification for the Gap Period was raised during the Retention Hearing, and considered to be open for petition at a later time (Transcript, p. 49, lines 8-10).  To this end, B&L respectfully submits that it is uniquely qualified, and it is in the best interests of the Debtors' estates, creditors and other parties in interest, to represent the Debtors in the matters noted above during this Gap Period, having served as outside general counsel for several years, particularly representing the Debtors in their prior financing and sale efforts in addition to the specialty practice area of intellectual property law.  Moreover, B&L has become intimately familiar with many of the unique business and legal issues that ecommerce companies face, as well as the Debtors' day-to-day business operations.

### III.     Relief Requested

6.     By this Application, the Debtors seek to supplement the prior allowance under 327(a), so as to also employ and retain B&L to represent the Debtors as special counsel in connection with their chapter 11 cases from the Petition Date through the 327(a) Retention Date.  The necessity of the services for which retention is sought, and the value of those services to the Debtors and to all interested parties in this case can be more fully described through the testimony of Brian Davies, Chief Restructuring Officer of the Debtors, at hearing on this matter

should this Court desire.  Accordingly, the Debtors request entry of an order under Bankruptcy Code section 327(e) authorizing each of them to employ and retain B&L as special counsel to perform the specific legal services described below either (i) during the Gap Period from March 23 to April 27, 2015, or in the alternative (ii) for the entire Chapter 11 period in place of this Court's prior Order of employment approval under 327(a).

## IV.    Background

7.    On March 23, 2015 (the "Petition Date"), each of the Debtors filed petitions with this Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

8.    On April 1, 2015, the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors in these cases (the "Creditors Committee").  No trustee or examiner has been appointed in these bankruptcy cases.

9.    The factual background relating to the Debtors and the commencement of these Cases is set forth in the Declaration of Brian L. Davies, Jr. in Support of First Day Motions [Docket No. 3] and the Supplemental Statement to Declaration of Brian L. Davies, Jr. in Support of First Day Motions [Docket No. 127].

10.    Prior to the Petition Date, B&L represented the Debtors in connection with numerous corporate, financing, employment, tax, intellectual

property and transactional matters.  Also prior to the Petition Date, the Debtors

sought the services of B&L with respect to, among other things, advice regarding

restructuring matters in general and, if required, preparation for the potential

commencement and prosecution of chapter 11 cases for the Debtors. Ultimately,

B&L served as lead bankruptcy counsel, with its retention proposed under section

327(a), in the commencement and prosecution of these cases from the Petition

Date forward.

11.    The Debtors previously applied, by their 327(a) Application filed on

April 2, 2015,[2] to retain B&L as bankruptcy co-counsel pursuant to Bankruptcy

Code section 327(a) *nunc pro tunc* to the Petition Date.  After a hearing conducted

on April 30, 2015, this Court granted the 327(a) Application but effective only as

of April 27, 2015, the 327(a) Retention Date, which was the date the Court

determined that B&L became disinterested under 11 U.S.C. § 101(14); the Court

otherwise denied *nunc pro tunc* relief for the period between the Petition Date and

the 327(a) Retention Date (the "Gap Period" as noted above). On May 6, 2015,

B&L submitted a proposed order approving the 327(a) Application under

certification of counsel [Docket No. 196] which was thereafter allowed by this

Court [Docket No. 201].

12.    By order dated April 30, 2015, this Court approved the retention of

Womble Carlyle Sandridge & Rice, LLP ("WCSR") as bankruptcy co-counsel

---

[2]      Debtors' Application for Entry of an Order Pursuant to 11 U.S.C. §§ 327(a) and 328(a), Fed.
R. Bankr. P. 2014 and 2016, and Del. Bankr. L.R. 2014-1 and 2016-1 Authorizing Retention
and Employment of Burns & Levinson LLP as Counsel for the Debtors, nunc pro tunc to the
Petition Date (D.I. 81) (the "327(a) Application").

retained pursuant to 327(a) in connection with the prosecution of the Debtors'
chapter 11 cases [Docket No. 180].

13.     While the instant Application suggests a shift between the
alternative statutory retention provisions of Section 327, it is clear that certain of
the professional services performed by B&L during the Gap Period also qualify as
the kinds of specialized services that may be performed by special counsel
retained pursuant to section 327(e) of the Bankruptcy Code.  The Debtors entered
into their prepetition engagement agreement with B&L with full and complete
knowledge of B&L's and its two partners' relationships with the Debtors and with
the sound judgment that retaining B&L to serve generally as counsel to the
Debtors was in the best interests of the estates and their many stakeholders.  As
for this Application, nothing about the Debtors' decision regarding the need and
merit for engaging B&L has changed.  Under the circumstances presented here,
the Debtors have determined that the proper course of action is to continue with
their choice of counsel, albeit on a special counsel basis for the Gap Period.  B&L
stands in a particularly unique position to provide transactional, corporate and
finance-related services on a special counsel basis, given its deep knowledge of
the Debtors, their businesses and their legal and financial affairs.

14.     To place this matter in some context, it should be noted that B&L
has already paid a heavy price for its prepetition support of the Debtors' efforts to
serve their stakeholders, having written off several hundred thousand dollars of
fully-earned and unpaid legal fees prior to the Petition Date, as part of the firm's

considerable efforts to meet the legal standards to qualify for section 327(a) retention as bankruptcy counsel as of the Petition Date.  The Debtors are certainly not going to overlook the immensely beneficial services B&L has provided during the Gap Period, nor would it be fair for any other stakeholder to do so in this case. By this Application, the Debtors seek to focus solely on those B&L services performed during the Gap Period that qualify as *special counsel services* pursuant to section 327(e) of the Bankruptcy Code.

15.     B&L has assured the Debtors that the firm will carefully review its time records for the Gap Period so that it will only seek compensation for matters properly within the scope of section 327(e) of the Bankruptcy Code.  The Debtors intend to be vigilant as well in reviewing the firm's proposed fee applications for the Gap Period.  B&L will not be seeking compensation for services performed during the Gap Period that may only be compensated when performed by plenary bankruptcy counsel retained under section 327(a) of the Bankruptcy Code.   As a result of this more restrictive standard, B&L anticipates having to write off a substantial amount of services it rendered during the Gap Period, but it nevertheless seeks some recognition of equity in seeking this Court's approval for the valuable core services that it did provide for the benefit of the Debtors and their estates.

## V.     Services Rendered as 327(e) Counsel

16.     Subject to approval by this Court, the special counsel services that B&L has rendered and proposes to render are as follows:

(a)   advise and represent the Debtors in the negotiation and documentation of the DIP financing and court approval of same;

(b)   advise and represent the Debtors in the transactional, corporate, and corporate finance services required in connection with the proposed sale of substantially all of the Debtors' assets, and any related or alternative transactions;

(c)   advise and represent the Debtors with respect to all of their intellectual property matters, including but not limited to the preservation of the Debtors' trademarks and customer relationship data, which comprise a valuable asset of the Debtors' estates; and

(d)   subject to the limitations of section 327(e), perform all other necessary legal services and provide all other necessary legal advice to the Debtors in connection with the matters referred to above.[3]

## VI.   Requirements of Section 327(e)

17.   The obvious question that this Application raises is why B&L should be authorized to serve as Debtors' special counsel during the Gap Period, when it was previously disqualified to serve as general bankruptcy counsel during that period per this Court's determination at the Retention Hearing.  Retention of an attorney under Bankruptcy Code section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel.  See, e.g., In re West Delta Oil Co., Inc., 432 F.3d 347, 357 (5th Cir. 2005) ("special counsel employed under § 327(e) need only avoid possessing interests 'adverse to the debtor or to the estate *with respect to the matter on which such attorney is to be employed*.'") (emphasis added; internal citations omitted).

---

[3] The scope of these services, although necessarily broad, is much narrower than the scope previously sought and allowed under the 327(a) Application.

9

18.     While this Court has determined that B&L held interests *adverse to the Debtors' estates* during the Gap Period, this determination does not necessarily extend to the same conclusion with respect to *those specific matters on which B&L would be employed* under 327(e) if this Application were to be allowed. "Subsection [327(a)] restricts retention of lawyers and other professionals tothose who do not hold or represent an interest adverse to the estate and are disinterested.  Subsection [327(e)] permits employment of an attorney 'for a specified special purpose,' so long as the attorney does not hold or represent 'any interest adverse to the debtor or to the estate with respect to the matter' on which he is to be employed." Century Indem. Co. v. Congoleum Corp. (In re Congoleum Corp.), 426 F.3d 675, 688-689 (3d Cir. N.J. 2005).  See also In re Polaroid Corp., 424 B.R. 446, 453 (Bankr. D. Minn. 2010) (section 327(e) only disqualifies counsel when they have conflicts related to the matter on which the attorney is to be employed); In re J.S. II, LLC, 371 B.R. 311 (Bankr. N.D. Ill. 2007) (section 327(e) has more relaxed conflict of interest standard than section 327(a)); In re EBW Laser, Inc., 333 B.R. 351, 359 (Bankr. M.D.N.C. 2005) (counsel not disqualified under section 327(e) because it holds prepetition claim); In re Servico, Inc., 149 B.R. 1009 (Bankr. S.D. Fla. 1993) (no violation of section 327(e) because receipt of the alleged preferential payment did not cause the law firm to hold any interest adverse to the debtor or the estate on the matter on which

it was employed); In re Black & White Cab Co., 175 B.R. 24, 25 (Bankr. E.D.

Ark. 1994); In re G & H Steel Serv., Inc., 76 B.R. 508 (Bankr. E.D. Pa. 1987).[4]

19.     To properly assess the "adverse interest" issues, we must refer to

the category of services articulated in sub-sections (a) – (d) of Paragraph 16

above, and determine whether the possession of the *de minimus* note and equity

holdings by family members of the two B&L partners during the Gap Period give

rise to adverse interests with respect to those specific categories of services:

> (a)    ownership of the notes and equity is not adverse to the objectives of obtaining operating financing during the Chapter 11 process;
>
> (b)    ownership of the notes and equity is not adverse to seeking the best result for the estates in the proposed sale of substantially all of the Debtors' assets, and any related or alternative transactions;
>
> (c)    ownership of the notes and equity is not adverse to issues concerning the Debtors' intellectual property matters; and
>
> (d)    ownership of the notes and equity is not adverse to providing other necessary legal services and advice to the Debtors in connection with the matters referred to above.

20.     In addition to the examination of "matter adversity," it is also

necessary to place the questioned note and equity holdings in context, to assess

whether there is sufficient gravity there to conclude that these interests do, indeed,

rise to a level of being adverse to the matters for which special retention is sought.

The challenged holdings represent literally fractional proportions of debt and

---

[4] See also In re Statewide Pools, Inc., 79 B.R. 312, 314 (Bankr. S.D. Ohio 1987) ("The Court believes where employment is sought only for specific limited purposes, that subsection (e) of § 327 not only eliminates the disinterestedness requirement for a professional who has formerly represented the debtor, but also narrows the conflict of interest issue to one of factual evaluation of actual or potential conflicts only as related to the particular matters for which representation is sought."

equity interests in the Debtors.  As for the note holdings, (a) they are contractually subject to the control and determinations of an independent Agent, who is solely empowered to act on behalf of a collective $18,822,534 of noteholders, of which B&L's partners' shares were less than 1%, and (b) those partners' note amounts were insignificant in light of the approximately $100 million of company debt in total.  Thus, there was no ability of either partner to effect any rights or impose any obligations on the Debtors that would be considered "adverse" to the Debtors -- even without considering what limited areas might be adverse to the specific matters for retention.  Moreover, it remains to be seen, after sale or reorganization of these Debtors, whether these instruments would hold any value at the end of the day, and were therefore not adverse under the final financial analysis.  While this Court determined that B&L held interests adverse to the Debtors' estates sufficient to bar service during the Gap Period, to the best of the Debtors' knowledge, and as set forth herein and in the Moskol 327(e) Declaration, when all of this analysis is run, neither B&L nor any attorney at the firm holds or represents an interest adverse to the Debtors or their estates with respect to the matters on which B&L seeks to be employed for the Gap Period.

## VII.    Professional Compensation

21.    Subject to this Court's approval, B&L will charge the Debtors for its special counsel legal services during the Gap Period on an hourly basis in accordance with its ordinary and customary rates in effect on the date such services are rendered, and for reimbursement of actual, reasonable out-of-pocket

costs and disbursements.  B&L will maintain detailed, contemporaneous records of time in tenth of an hour increments, and any actual and necessary expenses incurred in connection with the rendering of the legal services describing by category and nature of services rendered.

22.     For the information of the Court, the ranges of hourly rates generally charged by B&L for it professional services, subject to periodic adjustment, are:

| | |
|---|---|
| Partner | $375 to $725 |
| Associate | $240 to $550 |
| Paralegals and Paraprofessionals | $160 to $355 |

The hourly rates for Mr. Moskol and Mr. Sopp are $640 and $650, respectively, and for Mr. Unrad and Mr. Samarel are $500 and $350, respectively.

23.     The Debtors understand and have agreed that B&L hereafter will apply to the Court for allowances of compensation and reimbursement of expenses in accordance with sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Fee Guidelines, and any further orders of the Court applicable to compensation for professional services performed and expenses incurred after the Petition Date (collectively, the "Fee Guidelines").

24.     Subject to the Fee Guidelines, and any further orders of the Court, the Debtors propose to compensate B&L for services rendered at its customary hourly rates that are in effect at the time such services are rendered, as set forth in the Moskol 327(e) Declaration, and to reimburse B&L according to its customary

reimbursement policies.  B&L reserves the right to seek an enhancement of its fees or a lodestar award greater than its normal hourly time charges, subject to this Court's approval in accordance with applicable law.  The Debtors respectfully submit that B&L's rates and policies stated in the Moskol 327(e) Declaration are fair and reasonable.

25.    During these Bankruptcy Cases, B&L requests that it receive interim compensation for services rendered to the Debtors in accordance with upon the Court's approval of acceptable interim compensation procedures [Docket No. 185].  Any final payment of compensation and/or expenses shall be subject to allowance by this Court upon appropriate application pursuant to Sections 330 and 331 of the Bankruptcy Code, Del. Bankr. L.R. 2016-2, and any orders of this Court.

26.    As set forth in the Moskol 327(a) Declaration, B&L received a security retainer deposit (which was previously referred to as an advance fee payment) in the amount of $200,000 (the "Prepetition Retainer"), which was funded through the Debtors' taking an advance under their pre-petition debt facility.  The Prepetition Retainer was provided to B&L in contemplation of rendering restructuring and related services for the benefit of the Debtors during the course of these Bankruptcy Cases.  The Prepetition Retainer is not intended to be applied to any outstanding balances the Debtors may owe to B&L until alternative sources of payment have been pursued.

27.     At various times prior to the filing of these Bankruptcy Cases, B&L invoiced the Debtors for its pre-petition legal services rendered and expenses incurred in connection with or in contemplation of the filing of these Bankruptcy Cases.  The total amounts received for pre-petition legal services and expenses rendered by B&L in contemplation of the filing of these Bankruptcy Cases was $450,050.53 ($447,203.50 in fees and $2,847.03 in expenses).  All of these amounts were incurred and paid within the 90 days prior to the Petition Date.

28.     Within the 90 days immediately preceding the Petition Date, B&L received total fees and expenses from the Debtors for all services (including the payments referenced in paragraph 22 above, in contemplation of the filing of these Bankruptcy Cases) in the amount of $606,040.18 ($597,123.95 in fees and $8,916.23 in expenses).  These amounts were paid to B&L by the Debtors prior to the Petition Date and upon information and belief, such funds were generated from the Debtors' regular operations or other cash sources.

29.     B&L has received no other payment from the Debtors or any other related party arising in these Bankruptcy Cases.  Immediately prior to the filing of the Chapter 11 Petition, B&L held no receivable balance for outstanding legal services rendered to the Debtors.

## VIII.   Alternative Relief Sought

30.     As noted above, B&L's retention under Bankruptcy Code section 327(a) has been approved from and after the 327(a) Retention Date.  By this application, the Debtors seek also to retain B&L in a limited, special counsel

capacity under 327(e) only for the five week Gap Period, without affecting the previously-approved retention under section 327(a) for the period thereafter.

31.     As to the question of allowing this "two-tiered" counsel status, the Debtors searched for legal authority that would compel this Court's preclusion of a two-tiered scope of representation or otherwise foreclose the ability of the Debtors to obtain the relief sought in this Application.  What limited authority the Debtors could find is that a firm's dual status as 327(a) counsel and 327(e) counsel at different points in the bankruptcy proceedings has been permitted in a unique circumstance and where Section 327(e) appointment was the only means to compensate counsel for valuable services performed on behalf of the debtor's estate.  See In re Johnson, 397 B.R. 486 (Bankr. E.D. CA. 2008) (when counsel's 327(a) employment expired upon debtors losing their debtor-in-possession status, the court authorized continued retention under 327(e), finding that "§ 327(e) is available as a tool that may be used to enable the compensation of debtors' counsel in appropriate circumstances" and awarding fees retroactively for services performed prior to such appointment).

32.     In the event that this Court determines that there is a basis to approve B&L's engagement during the Gap Period under 327(e), but nevertheless declines to approve such engagement due to a distaste for a two-tiered nature of such approval, the Debtors would respectfully request in the alternative that B&L be retained *nunc pro tunc* from the Petition Date forward through the duration of this case solely under 327(e), and that this Court's prior Retention Order be

modified as such to reflect the changed posture of this representation.  As such, the Womble firm would accede to general representation under 327(a) in accordance with the existing Order permitting same [Docket No. 180].

### IX.    Conclusion

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) authorizing the Debtors to employ and retain the firm of B&L to represent each of them as special counsel pursuant to 327(e) to perform the services set forth above from the Petition Date through either (a) the 327(a) Retention Date or, in the alternative (b) the entirety of these proceedings in place of approval under 327(a); and (ii) granting the Debtors such other and further relief as is just and proper.

Dated:   May 7, 2015                              Karmaloop, Inc.,
                                                  KarmaloopTV, Inc.,
                                                  Debtors and Debtors in Possession


                                                  By:  */s/ Brian L. Davies*            .
                                                  Brian L. Davies, Jr.
                                                  Chief Restructuring Officer