IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Karmaloop, Inc., et al.,[1] | ) | Case No. 15-10635 (MFW) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Hearing Date: May 28, 2015 at 2:00 p.m. (ET)** |
| | ) | |
| | ) | **Related D.I. 203 and 232** |

**REPLY OF DEBTORS TO OBJECTION OF THE ACTING UNITED STATES
TRUSTEE TO APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(e)
AUTHORIZING EMPLOYMENT AND RETENTION OF BURNS & LEVINSON
LLP AS SPECIAL COUNSEL FOR THE DEBTORS-IN-POSSESSION
NUNC PRO TUNC TO THE PETITION DATE**

Karmaloop, Inc. and KarmaloopTV, Inc. (collectively, the "Debtors"), hereby file

this reply (the "Reply") to the objection (Docket No. 232) (the "Objection") of the Acting

United States Trustee (the "U.S. Trustee") to the Application for Order Under 11 U.S.C.

§327(e) Authorizing Employment and Retention of Burns & Levinson LLP ("B&L") as

Special Counsel for the Debtors-In-Possession Nunc Pro Tunc to the Petition Date

(Docket No. 203) (the "Modified Retention Application"), and in support of this Reply

state as follows:

**INTRODUCTION**

1.      B&L meets the legal standard for retention as special counsel under

Section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the

"Bankruptcy Code") for the period from the Petition Date through the effective date of its

retention as Debtors' counsel under Section 327(a) (the "Gap Period").  This Court has

---

[1]     The Debtors and the last four digits of their respective federal taxpayer identification numbers are
as follows: Karmaloop, Inc. – 3934 and KarmaloopTV, Inc. – 8230.  The Debtors' address is 334
Boylston Street, Suite 500, Boston, MA 02116.

not previously ruled on this application, submitted pursuant to Section 327(e), and indeed the Court invited the filing of this application to properly notice this relief for a hearing. The Debtors respectfully submit that the question for this Court is primarily a question of the permissible scope of services for B&L during the proposed Section 327(e) retention period.

2.     A major subset of tasks performed for the Debtors by B&L during this period and thereafter were the types of financing and transactional services that B&L historically performed for the Debtors prepetition, and continued to perform post-petition. B&L played a critical role in the Debtors' successful procurement of financing for these bankruptcy cases – services which called upon the firm's deep historical knowledge of the Debtors' collateral base and prepetition financing, capital structure and organizational structure.  B&L also played a key role in the core transactional nature of the Debtors' sale and sale process – also providing a level of service that could only come from the firm's long and deep experience with the Debtors, the firm's knowledge of the applicable non-bankruptcy legal issues impacting the transaction, and the complex bundle of legal rights generally that factored into the sale and sale process for these particular Debtors and their assets. The central tenet of the special counsel role is epitomized by what B&L brought to the Debtors and their estates here: counsel with particularly intimate knowledge of the Debtors' legal and business affairs, and actively representing the Debtors in one or more areas as of the filing of a bankruptcy case, such that replacing such counsel to perform those services postpetition would be extremely costly, risky and perhaps even irresponsible in terms of maximizing value of the estates.

3.      The U.S. Trustee objects to B&L being compensated for its services on the theories that the Modified Retention Application presents merely an unwarranted "reconsideration" of B&L's original retention application, and that the services for which B&L seeks retention under Section 327(e) are somehow not "special" enough to warrant retention under this statute. The Debtors respectfully disagree with the U.S. Trustee's recharacterization of the relevant facts and law, and note that the U.S. Trustee's two-pronged argument neglects the underlying tenets of Section 327(e) which are designed to benefit the Debtors' estates and the creditors, generally.

4.      The Debtors have retained B&L for several years prior to the Petition Date.[2] During this time, B&L not only served as the Debtors' primary corporate counsel, but also gained invaluable and unique insight into how the Debtors operate their businesses. When it came time for the Debtors to begin exploring the possibility of filing Chapter 11 bankruptcy petitions, B&L was therefore well positioned to handle this process in an extremely efficient and cost-effective manner. This benefit continued after the Petition Date, during which time B&L's long-standing familiarity with the Debtors' businesses, operations, and financial structure enabled an expedited and successful DIP funding and sale process – a result that brand new counsel would not likely have achieved during this limited time frame. There can be no dispute that the services provided by B&L during the Gap Period (the period from the Petition Date to the effective date of retention approval, as defined in the Modified Retention Application) provided an enormous benefit to the Debtors' estates as well as to their stakeholders.

---

[2]      Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Modified Retention Application.

5.      Courts in this district have often and routinely approved long serving corporate counsel to be retained post-petition as special corporate and transactional bankruptcy counsel (see Section III below), and the Debtors therefore urge this Court to overrule the U.S. Trustee's Objection and grant the relief sought in the Modified Retention Application.

## ARGUMENT

### I.     The Relief Sought Is Not Reconsideration Of A Prior Order, As This Court Did Not Previously Rule On This Issue.

6.      The U.S. Trustee objects to B&L's requested retention under Section 327(e) by claiming that the Court previously denied such request when it heard and ruled upon B&L's 327(a) Application (the "Retention Hearing"). The U.S. Trustee argues that the Modified Retention Application is, in essence, a motion for reconsideration of the 327(a) Application. This argument ignores the reality that the Debtors, by filing the Modified Retention Application, are seeking, **for the first time**, approval by this Court to retain B&L under Section 327(e), as an alternative to the prior retention, whether for the entirety of the case, or simply for the Gap Period under a two-tiered approval.

7.      Recognizing that retention pursuant to Section 327(e) was a new approach, the Court explicitly invited the Debtors to return following the Retention Hearing with a renewed retention application -- one made pursuant to Section 327(e):

> Mr. Kortanek:
> Yeah, I mean, right, immediately upon the request for more information, we— they did – the firm did provide it, Your Honor. So we didn't think there was any problem with disclosure in that sense. And again, for the 327(e) purposes, there – all the tasks that were done –
> The Court:
> But you didn't ask for 327(e). I think if you want a 327(e) you're going to have to file an application and ask for a nunc pro tunc and we'll deal with it then.

Tr. 49, 3-10.

8.     Clearly, the Court believed that if the Debtors wished to retain B&L pursuant to Section 327(e), an additional application needed to be filed for this new purpose, as nowhere in the 327(a) Application did the Debtors request retention pursuant to 327(e). Accordingly, the Modified Retention Application makes this request for the **first time**. During the Retention Hearing, while there was discussion about a "bifurcated 327(e) retention," the U.S. Trustee did not request (nor did the Retention Order ultimately contain)[3] an outright prohibition on 327(e) retention.[4] However, now that the Debtors are accepting the Court's invitation to file such an application, the U.S. Trustee views this issue as having already been decided even before it was properly presented to this Court.

9.     As the Modified Retention Application makes this request for 327(e) relief for the first time, it could not have been the subject of a prior ruling. The U.S. Trustee's analogy to evaluating it under the standards of a Motion for Reconsideration do not apply, and therefore this part of the Objection should be disregarded.

## II.    B&L May Be Retained Under 327(e) As Special Counsel Notwithstanding Its Retention Under 327(a).

10.     The U.S. Trustee further argues that the Debtors cannot receive two-tiered retention under each of 327(a) and (e), criticizing the Debtors' reliance on *In re Johnson*,

---

[3]     Notably, the Retention Order was submitted via a certification of counsel after consultation with the Trustee and one would surmise that if the Trustee believed at that time that the Section 327(e) retention had been ruled upon and denied by the Court, that such a ruling would have been embodied in the Retention Order.

[4]     This issue was raised, for the first time, by counsel to the Committee, who offered a suggestion to the Court that B&L's retention might be approved under Section 327(e) rather than Section 327(a). Tr. 44-45:24-25,1-9. Counsel to the Committee stated: "This seems very much to be a legal policy issue, and we're not weighing in on that. ... [w]here the lion's share of the work that's been done by debtors' counsel has been corporate-type transactional work. And so one of the things we posed to the debtors' counsel as potentially a less drastic alternative is for the Court, if you think it's appropriate, to consider converting this to a 327(e) representation to the extent that's useful at all."

397 B.R. 486 (Bankr. E.D. Ca. 2008) by claiming that this precedent "has no bearing on this case because the counsel in *Johnson* was not disqualified from serving as section 327(a) counsel, in contrast to B&L." Objection, ¶ 14. But the Debtors did not cite *Johnson* to revisit any disqualification issues. Rather, *Johnson* was cited for the unremarkable proposition that Debtors' counsel could be retained under different sections of the Bankruptcy Code – i.e. Section 327(a) and (e) – in the same case during different phases of the case's life cycle.

11.    Moreover, although the U.S. Trustee seems to imply that B&L's previous disqualification under Section 327(a) impairs the Debtors' ability to retain B&L pursuant to 327(e), this is not supported by case law in this district. For example, in *In re Woodworkers Warehouse, Inc.,* 323 B.R. 403 (D. Del. 2005) – a case cited by the U.S. Trustee in the Objection – the bankruptcy court denied the debtor's application to retain its proposed counsel (the "KL Firm") as general bankruptcy counsel pursuant to Section 327(a) due to a conflict of interest, yet it later allowed the debtor to retain the KL Firm as special counsel to provide certain corporate representation related to the bankruptcy case, including representing the debtor in seeking use of cash collateral and in the sale of its assets. *Id.* at 404-405. In *Woodworkers*, after the United States U.S. Trustee filed an appeal, the district court, despite the previous disqualification ruling, affirmed the KL Firm's retention as special counsel under Section 327(e). *Id.* Accordingly, as in *Woodworkers*, B&L's previous disqualification under 327(a) for the Gap Period should not preclude a favorable ruling on the Modified Retention Application.

**III.    The Requested Scope B&L's Section 327(e) Retention Is Consistent With Practices In This District And Applicable Case Law.**

12.    Finally, the U.S. Trustee asserts that B&L's retention under Section 327(e) should be denied because the scope of its proposed services – representing and advising the Debtors in connection with post-petition financing and the sale of the Debtors' assets in addition to general corporate work – is beyond the "specialized" scope of Section 327(e); an assertion made with no supporting authority.  Objection, ¶¶ 19-20.  The U.S. Trustee's final argument ignores that bankruptcy courts in this district allow retention of special counsel under Section 327(e) for these same purposes.  *See, e.g. Ocz Technology Group, Inc.,* Case No. 13-13126, Order dated January 8, 2014 [Docket No. 189] (special transaction counsel retained under Section 327(e) for, *inter alia,* matters related to the sale of its business, corporate matters and issues relative to its financing and credit agreement); *The Standard Registry Co.,* Case No. 15-10541, Order dated April 13, 2015 [Docket 258] (special counsel retained under Section 327(e) for, *inter alia,* general corporate matters, intellectual property issues, advising the Debtors on day to day business issues and assisting the Debtors and their bankruptcy co-counsel on additional matters wherein the use of special counsel would achieve better staffing and fee efficiencies.); *Natrol, Inc.,* Case No. 14-11446, Order dated July 16, 2014 [Docket No. 274] (special transactional counsel retained under Section 327(e) to assist, *inter alia,* with any financing or sale transactions, the due diligence, negotiation and documentation relating to any such transactions and to prepare various first day motions); *TPO Hess Holdings, Inc.,* Case No. 13-11327, Order dated June 17, 2013, [Docket No. 109] (special corporate and transactional counsel retained, *inter alia,* for sale of debtors' assets and operations, financings, certain tax and employee benefit issues, negotiations and drafting

corporate documents with respect to a plan of liquidation and general corporate matters).[5]

Thus, contrary to the U.S. Trustee's assertions, the matters pursuant to which the Debtors

seek to retain B&L under Section 327(e) are the types of tasks that special corporate and

transaction counsel typically are retained to accomplish. *See also Woodworkers,* 323

B.R. at 405 (law firm previously disqualified under Section 327(a) retained pursuant to

Section 327(e) to assist Debtors with obtaining use of cash collateral, the sale of its

assets, including disposing of related executor contracts and preparing and negotiating

debtor's KERP).

      13.     The U.S. Trustee's argument also ignores the rationale for allowing this

range of services: when analyzing the scope of special counsel's retention under Section

327(e), a court should consider "all relevant facts surrounding the debtor's case,

including but not limited to, the nature of the debtor's business, all foreseeable

employment of special counsel, the history and relationship between the debtor and the

proposed special counsel, expense of replacement counsel, potential conflicts of interest

and the role of general counsel." *Woodworkers,* 323 B.R. at 406 (citing *In the Matter of

First American Health Care of Georgia, Inc.,* 1996 WL 33404562, *3 (Bankr. S.D.Ga

Apr 18, 1996)). It is particularly relevant here that B&L had been representing the

Debtors for the past 4 years with respect to their corporate, financing, tax, intellectual

property and employment law issues. These cases have been very fast moving, having

proceeded from the filing of the Petitions to sale of the Debtors' assets in under 60 days.

Given the limited budget provided to Debtors' professionals in these cases pursuant to the

DIP financing documents, no other law firm was so situated to provide the range of

---

[5]     Attached hereto as Exhibits A-H are copies of the relevant Employment Applications and
respective Orders.

services absolutely required on such a very fast time frame and in as efficient and cost-effective manner.

### IV.    B&L Will Not Be Compensated For "General Bankruptcy" Work.

14.    Throughout these cases, B&L has worked closely with its co-counsel, Womble Carlyle Sandridge & Rice, LLP ("Womble"), to ensure that any duplication of services by the two firms is either non-existent or minimal. Womble was approved under 327(a) and would be compensated (subject to court approval) for those services comprising general bankruptcy work, while B&L (if 327(e) status is approved) would be compensated only for work within the scope of its special counsel retention, as identified in the Modified Retention Application.

15.    To assist the parties and this Court in differentiating the proposed roles of the Debtors' two firms, below is list of general bankruptcy tasks which demonstrates the large scope of work that has been performed under 327(a) (or potentially will be performed) by the Debtors' general bankruptcy counsel Womble,[6] if 327(e) retention is allowed for B&L:

**Matters Outside Scope of Section 327(e) Retention:**

A.    Day to day case administration, including customary motion practice *(e.g.,* executory contract assumption/rejection, various first day motions, various second day motions, claims reconciliation and objections, motions for relief from stay, etc.), except relating to the Debtors' motion to sell all or substantially all of its assets (the "Sale Motion") or motion to obtain DIP Financing.

B.    Negotiating and documenting all settlements with respect to the Debtors and their estates as well as representing the Debtors in court in connection with such settlements.

---

[6]    To the extent that B&L has performed some of these tasks in the past, B&L obviously would not seek reimbursement for such tasks.

     C.     Conducting or appearing at omnibus and other hearings before the Bankruptcy Court, except as expressly relating to the Sale Motion or the DIP Financing, or relating to B&L's retention and compensation in these Chapter 11 cases.

     D.     Representing the Debtors with respect to retentions of any other estate professionals.

     E.     Representing the Debtors with respect to its Key Employee Retention Program.

     F.     Negotiating, drafting or revising chapter 11 plan or disclosure statement, except as may be necessary consistent with the scope of B&L's engagement, to the extent B&L's retention is solely pursuant to Section 327(e).

     G.     Representing the Debtors in any litigation in the bankruptcy court including but not limited to any avoidance actions, claims objections, or other bankruptcy related litigation, as well as litigation commenced by TC Tradeco, LLC (the "TCT Litigation"), to the extent B&L's retention is solely pursuant to Section 327(e).

     H.     Any other matters outside the scope of B&L's retention unless approved by further order of the Court upon an application properly filed and noticed to all creditors and parties in interest entitled to notice thereof.

     16.     In *Woodworkers*, the district court, in affirming the retention of the KL Firm as special counsel, noted that general bankruptcy counsel was retained to conduct the basics of the case including advising the Debtor with respect to its duties and powers, formulating, negotiating finalizing seeking confirmation of a plan, objecting to claims, and pursuing all avoidance actions. *Id.* at 407. The Delaware district court found persuasive that there was a substantial amount of work to be done or which had been done by general bankruptcy counsel that was outside the scope of special counsel's retention. *Id.* at 408. *See also In re Devlieg, Inc.,* 174 B.R. 497, 505 (Bankr. N.D. Ill 1994) (court grants special counsel's retention under Section 327(e) citing to the great amount of legal work to be conducted by general bankruptcy counsel).

     17.     The above list of 327(a) legal tasks should allay any concerns of the U.S. Trustee or the Court that B&L's retention under Section 327(e) would be tantamount to "conducting the case" during the Gap Period (or potentially beyond) as it is clear that

B&L would not be compensated for services that would be deemed to fall within the scope of general bankruptcy counsel's representation.[7]  The Debtors believe that, in light of the relatively modest amount of specialized services for which B&L would be compensated, and the precedent and practice in this district which has permitted special counsel to be retained to perform such similar tasks, the Modified Retention Application should be approved.

## CONCLUSION

The Debtors have rebutted each of the U.S. Trustee's arguments presented in the Objection.  The Debtors further believe that the relief being sought in the Modified Retention Application is warranted and equitable to all parties.  Accordingly, the Objection should be overruled and the Modified Retention Application approved by this Court.

---

[7] This should also allay any concerns with billing issues during the Gap Period.  There is a clear list of tasks for which B&L cannot charge the estates.  The Trustee and the Court, through the fee application process that has been adopted for these Cases, will have several opportunities to object if B&L seeks compensation for a task outside the scope of its permitted representation, as would the Committee or the Debtors' Post-Petition Lenders (who are paying professional fees and would perhaps have the greatest motivation to ensure that unearned fees are not mistakenly paid to B&L).

Dated:  May 27, 2015

**WOMBLE CARLYLE SANDRIDGE
& RICE, LLP**

*/s/ Steven K. Kortanek*
Steven K. Kortanek (Del. Bar No. 3106)
Thomas M. Horan (Del. Bar No. 4641)
Ericka F. Johnson (Del. Bar No. 5024)
Morgan L. Patterson (Del. Bar No. 5388)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
E-mail:  skortanek@wcsr.com
E-mail:  thoran@wcsr.com
E-mail:  erjohnson@wcsr.com
E-mail:  mpatterson@wcsr.com

-and-

**BURNS & LEVINSON LLP**
Scott H. Moskol
William V. Sopp
Michael V. Samarel
125 Summer Street
Boston, MA 02110
Telephone: (617) 345-3000
Facsimile: (617) 345-3299
E-mail:  smoskol@burnslev.com
E-mail:  wsopp@burnslev.com
E-mail:  msamarel@burnslev.com

*Counsel for the Debtors and Debtors-in-
Possession*

12