## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>KARMALOOP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 15-10635 (MFW)<br><br>(Jointly Administered)<br><br>**Hearing Date: June 22, 2015 at 11:30 a.m. (ET)**<br>**Objection Deadline: June 11, 2015 at 4:00 p.m. (ET)** |

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER APPROVING SETTLEMENT BY AND AMONG OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND CAPITAL II, L.P., AS AGENT

The Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned jointly administered cases (the "Bankruptcy Cases"), hereby submits this motion (the "Motion") for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) approving the settlement (the "Settlement") of the Committee and Comvest Capital II, L.P., in its capacity as prepetition lender, agent for prepetition lenders, the postpetition agent for the postpetition lenders and postpetition lender of the Debtors ("Comvest") memorialized in the stipulation attached to the Proposed Order as Exhibit 1 (the "Settlement Agreement"); and (ii) granting the Committee such other and further relief as the Court deems just and proper. In support of the Motion, the Committee respectfully represents as follows:

### JURISDICTION

1.      This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]   The Debtors and the last four digits of their respective federal taxpayer identification numbers are as follows: Karmaloop, Inc. – 3934 and KarmaloopTV, Inc. – 8230. The Debtors' address is 334 Boylston Street, Suite 500, Boston, MA 02116.

## BACKGROUND

**A.    Facts Relevant to this Motion**

3.      On March 23, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No trustee or examiner has been appointed in the Debtors' bankruptcy cases.

5.      On April 1, 2015, the Committee was appointed in the Bankruptcy Cases by the Office of the United States Trustee.  The Committee selected Lowenstein Sandler LLP and Young Conaway Stargatt & Taylor, LLP as its counsel, and Emerald Financial Consulting LLC as its financial advisor.

6.      On April 17, 2015, the Court entered the (a) *Final Order Authorizing Debtors to: (A) Use Cash Collateral; (B) Incur Postpetition Debt; and (C) Grant Adequate Protection and Provide Security and Other Relief to Comvest Capital II, L.P. as Agent, and the Lenders* [D.I. 143] (the "Final DIP Order"); and (b) the *Order (A) Approving Bid Procedures and Bid Protections Relating to Sale of Substantially all of the Debtors' Assets; (B) Scheduling an Auction and Hearing; (C) Approving Form and Manner of Notice of Sale and Auction; and (D) Establishing Procedures Relating to Assumption and Assignment and Rejection of Contracts* (D.I. 147) ("Bid Procedures Order").[2]

7.      By virtue of the Final DIP Order, and as a condition to receiving post-petition financing, the Debtors stipulated to the priority, extent, and validity of certain liens and that Comvest held a perfected security interests in, and liens on or against, substantially all of the Debtors' assets.  *See*, *e.g.*, Final DIP Order at ¶ D.  These assets include certain prepetition collateral identified in the Final DIP Order (the "Prepetition Collateral").  However, the Final

---

[2]  Pursuant to the Bid Procedures Order, if no Qualified Bids (as defined in the Bid Procedures Order) other than the Purchaser's bid were received by May 20, 2015 "the Sale Hearing shall be held ... on May 21, 2015" (the "Sale Hearing").  *See* Bid Procedures Order at ¶ 10.  The deadline to file an objection to the sale was May 14, 2015.  *Id.* at ¶ 13.

DIP Order provided that these stipulations would not be binding on all Challenge Parties (defined in the Final DIP Order) and provided a process for which such parties could investigate Comvest's alleged liens on the Prepetition Collateral. *Id.* at ¶ 8.

8.    The Committee's due diligence revealed insufficient evidence to establish that Comvest had duly perfected liens and/or security interests in all of the Prepetition Collateral in accordance with applicable law as of the Petition Date. In particular, the Committee challenged Comvest's alleged prepetition liens (the "Committee Lien Challenge") on: (a) thirty-four percent (34%) of the Debtors' interest in the equity of Karmaloop Europe AG; and (b) the registered copyright "Karma Blend logo" (Registration No. VAu000478670) owned by Karmaloop, Inc. (collectively, the "Unencumbered Property"). Comvest disputed the assertions raised in the Committee Lien Challenge. Subsequently, the Committee and Comvest entered into the *Stipulation By and Among the Official Committee of Unsecured Creditors and Comvest Capital II, L.P., as Agent, Extending Certain Deadlines* dated May 5, 2015 ("Lien Challenge Stipulation"), which extended the Committee's investigation deadline by two weeks to May 19, 2015. On May 6, 2015, the *Order Approving Stipulation By and Among the Official Committee of Unsecured Creditors and Comvest Capital II, L.P., as Agent, Extending Certain Deadlines* (D.I. 194).[3]

9.    As a global resolution had not be reached, on May 14, 2015, the Committee filed the *Official Committee of Unsecured Creditors (I) Objection to the Debtors' Motion for Entry of an Order Approving and Authorizing the Sale of the Debtors Assets Free and Clear of all Liens, Claims and Encumbrances and Granting Related Relief and (II) Lien Challenge* [D.I. 216] ("Objection"). In its Objection, the Committee memorialized the issues it had raised in the Committee Lien Challenge and addressed various sale-related issues.

10.    As no party, outside of the Purchaser, expressed an interest in bidding on the Debtors' assets by the May 20, 2015 bid deadline, the Sale Hearing was held on May 21, 2015.

---

[3] The Lien Challenge Stipulation is attached as an exhibit thereto.

01:17150043.1

*See* Bid Procedures Order at ¶ 10.   However, just prior to the Sale Hearing, as a result of extensive good faith, arms-length negotiations, the Committee and Comvest (collectively, the "Parties") reached a Settlement, in principal.

**B.      Terms of Settlement**

11.      The Parties' Settlement was memorialized in the Settlement Agreement executed at the Sale Hearing held on May 21, 2015.   The key terms of the Settlement are as follows:[4]

(a)      As a part of the global resolution, the Settlement provides for a Creditor Trust to be created for the benefit of Debtors' general unsecured creditors.   *See* Settlement Agreement at ¶ 1.

(b)      The Creditor Trust will be funded upon the Recovery Threshold reaching a certain amount within specific time period, with the specific funding amount determined by the time period (defined as the Sharing Percentage in the Settlement Agreement).   *Id.* at ¶ 2.

(c)      Recovery for the Creditor Trust from Specified Claims.   *Id.* at ¶¶ 3–4.

12.      The Settlement is a final and complete resolution of the Committee Lien Challenge and the Objection, subject to this Court's approval.   *Id.* at 3.

## RELIEF REQUESTED

13.      By this Motion, the Committee respectfully requests the entry of an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 (i) approving the Settlement Agreement; and (ii) granting the Committee such other and further relief as the Court deems just and proper.

## BASIS FOR RELIEF

14.      Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."   11 U.S.C. § 105(a).   Bankruptcy Rule 9019(a) provides, in relevant part,

---

[4]   The description of the Settlement Agreement in this Motion is for descriptive purpose only.   Reference should be made to the actual terms of the Settlement Agreement that is annexed to the Proposed Order as Exhibit I.   To the extent that there is any inconsistency between the description contained herein and the terms of the Settlement, the Settlement Agreement will control.   Defined terms used in this paragraph that are not defined herein shall have the meanings ascribed to them in the Settlement Agreement.

that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement." Fed R. Bankr. P. 9019(a).

15.     Settlements and compromises are a "normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders for TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968).  Courts in this and other districts have recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  *See, e.g., In re Coram Healthcare Corp.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004); *see also Vaughn v. Drexel Burnham Lambert Grp., Inc., (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr S.D.N.Y. 1991) (recognizing bankruptcy courts can approve a compromise or settlement if it is in the best interest of the estate).

16.     As noted by the court in *Coram*, a court need not be convinced that the settlement is the best possible compromise in order to approve it.  *Coram Health,* 315 B.R. at 330; *see also In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). Rather, "[t]he court need only conclude that the settlement falls within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008) (quoting Coram Healthcare, 315 B.R. at 330).  Courts have held that compromises and settlements are generally favored, *see e.g., In re World Health Alts., Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally favored in bankruptcy"), and should be approved where "the compromise is fair, reasonable, and in the best interest of the estate." *In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (internal citation omitted); *see In re Capmark Fin. Grp. Inc.*, No. 09-13684 (CSS), 2011 WL 6013698 at ¶ 174 (Bankr. D. Del. Apr. 15, 2011) (noting "fair and equitable" standard for determining appropriateness of a settlement) (internal citations omitted).

17.     The Third Circuit set out four criteria (often referred to as the Martin Factors) for a bankruptcy court to consider when evaluating a settlement proposal under Bankruptcy Rule 9019: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the

complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal citation omitted); *see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)*, 283 F.3d 159, 165 (3d Cir. 2002); *In re eToys, Inc.*, 331 B.R. 176, 198 (Bankr. D. Del. 2005). It is not necessary, however, for the court to conduct a "mini-trial" of the facts or the merits underlying the dispute. *See In re Adelphia Commc'ns Corp.*, 327 B.R. at 159 (citations omitted). Rather, as noted above, the court need only determine that the settlement lies above the lowest point in the range of reasonableness and is in the best interests of the debtor's estate. "In doing so, the court is permitted to rely upon 'opinions of the trustee, the parties, and their attorneys.'" *In re Adelphia Commc'ns Corp.*, 327 B.R. at 159 (internal citation omitted); *see also In re Drexel Burnham Lambert*, 134 B.R. at 505 (recognizing that a court may give weight to the "informed judgments of the . . . debtors-in-possession and their counsel that a compromise is fair and equitable . . . and consider the competency and experience of counsel who support the compromise").

18. The Committee respectfully submits that the Settlement Agreement amply meets these criteria. With respect to first and third criteria, the Committee believes that these factors weigh in favor of approval of the Settlement due to the existence of facts that make the outcome and resolution of the issues asserted in the Committee's Lien Challenge uncertain. *See TMT Trailer Ferry*, 390 U.S. at 425 (noting that inherent to the process of evaluating proposed settlements is the need to compare the terms of the compromise with the likely rewards of litigation.) The issues underlying the Committee's challenge of Comvest's liens on the Unencumbered Property are, in part, driven by the value of the Debtors' European holdings. As a result, the litigation of the Committee Lien Challenge would be fact-intensive in many respects, requiring extensive discovery and involving various factual and legal issues surrounding the determination and valuation of the Debtors' European holdings. Moreover, the Committee believes that the value derived for general unsecured creditors as a whole under the Settlement Agreement fairly takes into account the Unencumbered Property. Furthermore, the

01:17150043.1

Committee believes that the amounts at issue and lack of certainty of a clear, positive outcome with respect to the claims asserted in the Committee Lien Challenge make the inconvenience and delay attendant to the litigation of the Committee Lien Challenge an unwarranted and costly distraction in these cases generally.

19.     With respect to the second and fourth criteria, even if the Committee was able to resolve or successfully litigate with Comvest its concerns with the Unencumbered Property, such disputes could cause significant delay.  During this time, the Bankruptcy Cases would remain open and the value of the Debtors' estates would erode.  Consequently, any value derived from the collection of an award would likely be offset by estate costs.  Accordingly, the Committee submits that entry into the Settlement Agreement will provide a sum certain that can be distributed to creditors while reducing litigation expenses that the estates would inevitably incur if these matters were litigated to judgment.

20.     For the reasons set forth herein, the Committee requests that this Motion be approved as entry into the Settlement Agreement is in the best interests of the Debtors' estates and creditors.

## NOTICE

21.     Notice of this Motion has been given via hand delivery or first class mail to (i) counsel to the Debtors, (ii) the U.S. Trustee, and (iii) entities that have requested notice pursuant to Bankruptcy Rule 2002.  The Committee submits that no other or further notice need be given.

## NO PRIOR REQUEST

22.     No previous motion or application for the relief sought in this Motion has been made to the Court or any other court.

## **CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court enter the Proposed Order, substantially in the form attached hereto as **Exhibit A**, granting this Motion and such other relief as may be just or proper.

Dated: May 28, 2015            LOWENSTEIN SANDLER LLP

                                   Sharon L. Levine
                                   Cassandra Porter
                                   65 Livingston Avenue
                                   Roseland, New Jersey 07068
                                   Telephone: (973) 597-2500
                                   Facsimile: (973) 597-2400

                                   -and-

                                   YOUNG CONAWAY STARGATT & TAYLOR, LLP

                                   /s/ Jaime Luton Chapman
                                   M. Blake Cleary (No. 3614)
                                   Sean M. Beach (No. 4070)
                                   Jaime Luton Chapman (No. 4936)
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware 19801
                                   Telephone: (302) 571-6600
                                   Facsimile: (302) 571-1253

                                   *Counsel for the Official Committee*
                                   *of Unsecured Creditors*